[Crim. No. 10247. First Dist., Div. Two. Oct. 30, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN FAULKNER, Defendant and Appellant.

## COUNSEL

John Faulkner, in pro. per., and David R. Packard, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Joyce F. Nedde and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KANE, J.**—Defendant John Faulkner appeals from a judgment of conviction entered on jury verdicts finding him guilty of first degree robbery on two counts (Pen. Code, §§ 211 and 211a) and possession of a firearm by a felon (Pen. Code, § 12021) on two counts.

### Facts

The facts giving rise to the above conviction grew out of two isolated robberies: robbery of Daniel Carmon Booth ("Booth") on April 24, 1970 ("first robbery") and robbery of David D. Jones ("Jones") on January 10, 1971 ("second robbery").

*First robbery:* Booth's testimony concerning the first robbery can be summarized as follows: On April 24, 1970, at approximately 3 p.m., Booth was on duty as manager of the Royal Motel located on MacArthur Boulevard, Oakland. At that time a male Negro, about 5′ 6″-5′ 7″ tall entered the motel office. He asked the price of a room. He wore a khaki wool "chuke" cap and had a short moustache and beard. Suddenly, he turned and pointed a revolver at Booth demanding all the money on hand. Booth opened the cash drawer and the man took approximately $19 and then fled from the well-lighted office. Booth identified appellant as the robber both at the pretrial lineups and in court.

*Second robbery:* On January 10, 1971, at about 5 a.m., Jones was on duty as a hotel clerk at Hotel Ray, located at 492 10th Street, Oakland. A male Negro came in asking about a room, then asked and was allowed to go upstairs to a restroom. About five minutes later the 5′ 4″ prospective lodger returned waving a revolver and carrying a paper sack. Throwing the sack on the floor, he ordered Jones to pick it up and to fill it with money. Jones filled the sack with about $70-$80. The robbery took about

four minutes, and occurred in a well-lighted office. Jones identified the robber as appellant.

### The Lineup Identification Procedures

Appellant took part in two pretrial lineups, on January 13, 1971 ("first lineup") and on January 14, 1971 ("second lineup"). It was stipulated that counsel was not present at either lineup.

In the first lineup appellant occupied position number two among five participants. He was listed as 5′ 3″ tall, weighing 135 pounds. The rest of the subjects were also Negro, with the following physical characteristics: number one: 5′ 8″, 150 pounds; number three: 5′ 10″, 163 pounds; number four: 5′ 9″, 141 pounds; number five: 5′ 9″, 130 pounds. In the second lineup appellant again occupied the number two position. The other four men, all Negro, had the following physical attributes: number one: 5′ 7″, 140 pounds; number three: 5′ 7″, 165 pounds; number four: 5′ 6″, 150 pounds; number five: 5′ 7″, 150 pounds. The jailers generally tried to get men of similar height, weight and size for the lineups, if available.

Booth made a tentative identification of appellant at the first lineup. He noticed that appellant was the shortest man in the lineup and based his identification on size, appearance and the words spoken by the lineup subjects. At the second lineup Booth observed that appellant was in the same position and again was the smallest person. However, his identification was not based on height but was made after the subjects wore wool "chuke" caps of the type worn by the robber. His in-court identification, however, was made solely on the basis of the robbery events.

Jones identified appellant at the first lineup but was not "fairly certain" or "positive" of his identification. Although appellant was the shortest man in the lineup, Jones selected him because he fit the description of the man who had robbed him. In any event, Jones noticed little height difference between appellant and the next shortest man in the lineup. Jones attended two preliminary hearings and stated that he became more sure of his identification each time he saw appellant. The record also establishes that no hints or suggestions were made by the police to the identifying witnesses.

After a hearing out of the jury's presence, the trial court found beyond a reasonable doubt that the lineups were fairly conducted and that they had not affected the in-court identifications.

Upon the foregoing evidence appellant was found guilty of first degree

robbery on counts one and five, and of possession of a firearm by a felon on counts two and six. On the motion of the district attorney, the remaining counts of the information were dismissed. Probation was denied and appellant was sentenced to state prison as prescribed by law. The court further ordered that appellant be sentenced for the term prescribed by law as to the arming and use clauses of the robbery counts.

## Identification

■ Appellant complains that the pretrial lineups were illegal because they were conducted in the absence of counsel in violation of his Sixth Amendment right (*United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]) and were unnecessarily suggestive denying him due process of law (*Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *People* v. *Bauer* (1969) 1 Cal.3d 368 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]). Appellant insists that since the in-court identifications were tainted by the illegal lineups, they should have been excluded from evidence. We find no merit in any of these contentions.

(a) Appellant's first contention can be summarily disposed of. In a recently decided case, *Kirby* v. *Illinois* (1972) 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], the United States Supreme Court made it clear that the right to counsel attaches only at or after the initiation of adversary judicial criminal proceedings by way of formal charge, preliminary hearing, indictment, information or arraignment.

The record before us discloses that the two successive lineups in which appellant was not represented by counsel were conducted after appellant's arrest but well before the formal charge (information) was filed against him on May 20, 1971. Thus, appellant clearly falls within the rule pronounced in *Kirby* v. *Illinois, supra,* making his claim to counsel groundless.

(b) ■ Appellant next contends that the pretrial lineups were unduly suggestive because he was the shortest man in both lineups (5 inches shorter in the first, 3 inches shorter in the second), he was the only one to reappear in the second lineup, and he bore an identical number (No. 2) in both lineups. He also maintains that the in-court identifications by Booth and Jones were tainted by the illegal lineups and had no independent origin. We disagree.

■ It is, of course, axiomatic that a lineup which is *unnecessarily suggestive* and conducive to irreparable mistaken identification deprives the

suspect of due process of law and the in-court identification *based upon the lineup* is inadmissible in evidence (*Stovall* v. *Denno, supra* at p. 302 [18 L.Ed.2d at p. 1206]; *People* v. *Caruso* (1968) 68 Cal.2d 183, 187-188 [65 Cal.Rptr. 336, 436 P.2d 336]). Contrariwise, it is also established that an in-court identification which does have an origin independent of the pre-trial identification is admissible (*People* v. *Martin* (1970) 2 Cal.3d 822, 831 [87 Cal.Rptr. 709, 471 P.2d 29]).

■ While it has been suggested that a lineup with a tall defendant among short men could be unfair (*United States* v. *Wade, supra* at p. 232 [18 L.Ed.2d at p. 1160]), the California cases have held that the height disparity in a lineup is not per se suggestive (*People* v. *Floyd* (1970) 1 Cal.3d 694, 712 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Lyons* (1970) 4 Cal.App.3d 662, 667 [84 Cal.Rptr. 535]; *People* v. *Elder* (1969) 274 Cal.App.2d 381, 390-391 [79 Cal.Rptr. 466]; *People* v. *Farley* (1968) 267 Cal.App.2d 214, 218 [72 Cal.Rptr. 855]; *People* v. *Tarpley* (1968) 267 Cal.App.2d 852, 854-855 [73 Cal.Rptr. 643]). Instead, the crucial issue is whether appellant has been singled out and his identification made a foregone conclusion under the circumstances (cf. *People* v. *Caruso, supra* at p. 187).

■ The law is well settled that where, as here, it is asserted that the pretrial identification was so unfair as to taint the in-court identification, the trial court must carry out an initial procedure outside the presence of the jury to determine the fairness of the pretrial identification. If the trial court decides that the pretrial identification procedure was fair, the witness may identify defendant in the courtroom without requiring the prosecution to show that the in-court identification has an independent origin (*People* v. *Rodriguez* (1970) 10 Cal.App.3d 18, 30-31 [88 Cal. Rptr. 789]). ■ In resolving the fairness of the pretrial identification, the totality of circumstances must be considered (*People* v. *Bauer, supra* at p. 374), and the conflicts in the evidence must be determined by the trial judge (*People* v. *Rodriguez, supra* at p. 30).

■ Turning to the case at bench in light of the foregoing principles, it must be emphasized that after a proper procedure the trial court here found that the lineups were fairly conducted. This finding by the trial court obviated the further necessity of showing that the in-court identification was based on a source independent of the pretrial identification. Thus, the sole issue awaiting determination is whether the finding of the trial court is supported by sufficient evidence.

Adverting to the record at hand, it becomes clear that the police made no suggestions whatever to either Booth or Jones as to appellant's person. It

also appears that the jailers, as a general practice, tried to get men of similar height, build, complexion, etc. for the lineups if available, and placed appellant in the lineup with taller men due to the fact that appellant, because of his shortness, was hard to match with similarly short subjects. Likewise, the record indicates that the positions of the lineup participants were allotted by chance drawing, and the procedure as a whole was utterly devoid of any kind of police wrongdoing.

More importantly, however, the record discloses that the height disparity did not play a significant role in the identification procedure which, in turn, negates the proposition that appellant was singled out for identification. While there is some indication in the evidence that the attention of the identifying witnesses was initially directed to appellant owing to his shortness, it is unquestionable that neither Booth nor Jones was able to make a positive identification at the first lineup. According to his unimpeached testimony, Booth based his identification on appellant's face, his unusual high forehead observed during the robbery, and the "chuke" that appellant wore at the second lineup together with other participants. Likewise, Jones testified that he picked appellant because he fit the description of the robber rather than because of his shortness, and, in his opinion, another man in the second lineup was only slightly taller than appellant. Thus, the totality of the circumstances compels the dual conclusion that the pretrial lineups were not suggestive and that the ruling of the trial court that the in-court identifications were admissible is supported by sufficient evidence.

In view of this conclusion it is unnecessary to decide whether the in-court identification of appellant was also admissible upon the alternative basis that it had an independent origin (*People* v. *Martin; People* v. *Rodriguez,* both *supra*).

### *Introduction of Prior Robbery Conviction*

Relying on Penal Code, sections 1025 and 1093, appellant contends that since he admitted his prior robbery conviction, disclosure of it before the jury constituted prejudicial error. Appellant's reliance is misplaced.

In general, Penal Code sections 1025 and 1093 provide[1] that

[1]Section 1025 provides in material part that "When a defendant who is charged in the accusatory pleading with having suffered a previous conviction pleads either guilty or not guilty of the offense charged against him, he must be asked whether he has suffered such previous conviction. If he answers that he has, his answer must be entered in the minutes of the court, and must, unless withdrawn by consent of the

where the defendant had admitted a charged prior felony conviction, his admission is conclusive of that issue and is no longer a matter for the jury. However, the authorities make it clear that sections 1093, subdivision 1, and 1025 have reference exclusively to those cases where a previous conviction is alleged for the purpose of enabling the court to impose a greater punishment than authorized for the offense charged (*People* v. *Brashear* (1969) 271 Cal.App.2d 306, 311 [76 Cal.Rptr. 485]; *People* v. *Cooks* (1965) 235 Cal.App.2d 6, 14 [44 Cal.Rptr. 819]). In such instances the prior conviction is obviously unrelated to the issue of guilt or innocence of the crime charged and the introduction of the prior felony in such case might unfairly prejudice the defendant because the jury could conceivably infer present guilt from past misconduct ▮▮▮ On the other hand, if the former conviction is an element of the offense for which defendant is being tried (as in a prosecution under section 12021 of the Penal Code[2]), the prior felony conviction as well as the possession of a firearm must be proved and determined by the jury; and the defendant cannot, by admitting the felony conviction out of the presence of the jury, preclude its introduction into evidence. (*People* v. *Gallinger* (1963) 212 Cal.App.2d 851, 855 [28 Cal.Rptr. 472]; *People* v. *Davenport* (1962) 210 Cal.App.2d 335, 340 [26 Cal.Rptr. 753].)

Appellant's reference to *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] is also misplaced. *Beagle* holds that under Evidence Code, section 352, the trial court has discretion to exclude evidence of a prior felony conviction offered to impeach a defendant's testimony when the prejudice of such a conviction outweighs its relevance. It is clear, however, that while in the case contemplated by *Beagle* the prior conviction evidence goes only to a collateral issue (impeachment of witness), in the instant case the prior felony conviction is relevant to the very issue of guilt, proving or disproving the crime of possession of a firearm by a convicted felon. It is therefore evident that no balancing process is required or allowed.

---

court, be conclusive of the fact of his having suffered such previous conviction in all subsequent proceedings. . . . In case the defendant pleads not guilty, and answers that he has suffered the previous conviction, the charge of the previous conviction must not be read to the jury, nor alluded to on the trial."

Section 1093, subdivision 1, reads as follows: "1. If the accusatory pleading be for a felony, the clerk must read it, and state the plea of the defendant to the jury, and in cases where it charges a previous conviction, and the defendant has confessed the same, the clerk in reading it shall omit therefrom all that relates to such previous conviction. In all other cases this formality may be dispensed with."

[2]Section 12021 of the Penal Code sets forth in pertinent part that any person who has been convicted of a felony and who owns, or has in his possession or under his custody or control any pistol, revolver or other firearm is guilty of a public offense.

## Modification of Judgment

The record discloses that appellant was charged with having been armed during the commission of the robberies and the jury so found. Accordingly, his minimum sentence was increased under Penal Code, sections 3024 and 12022, which provide for additional punishment where a person commits a felony while armed. Respondent admits that since the fact of being armed is essential to the conviction of first degree robbery, sections 3024 and 12022 of the Penal Code are inapplicable to the instant case (*People* v. *Floyd* (1969) 71 Cal.2d 879, 883 [80 Cal.Rptr. 22, 457 P.2d 862]). Respondent requests, however, that sentence be augmented under Penal Code, section 12022.5[3] and the judgment be modified to show that appellant used a firearm within the meaning of that section.

The cases in point emphasize that, in view of the severity of the additional punishment compelled by section 12022.5, the jury must make a specific finding on the issue of use, and section 12022.5 cannot be made applicable without determination of the issue of use by a *properly instructed jury* (*People* v. *Spencer* (1972) 22 Cal.App.3d 786, 801 [99 Cal. Rptr. 681]; *People* v. *Washington* (1971) 17 Cal.App.3d 470, 475-476 [94 Cal.Rptr. 882]). While in the instant case appellant was admittedly charged in the information with being armed and having used a weapon at the time of the robberies, and the jury found the arming and use clauses to be true, it is apparent that the jury was not properly instructed on the use required under section 12022.5. Thus, it appears that although the use of a firearm within the meaning of section 12022.5 includes *display with menace* during the course of the robbery (*People* v. *Washington, supra* at p. 477; *People* v. *Spencer, supra* at p. 800), the trial judge in his instruction to the jury expressly stated that it was not necessary that the weapon be used or be visible. Thus, the inadequacy of the jury instruction on use under Penal Code, section 12022.5 is self-evident. It follows that under the facts presented by the case at bench, the modification of judgment as requested by respondent is unwarranted and must be denied.

## Speedy Trial

Finally, appellant contends that his right to a speedy trial was denied because more than 60 days elapsed between the filing of the first

---

[3]Penal Code section 12022.5 was enacted following *People* v. *Floyd, supra,* 71 Cal.2d 879, providing an additional sentence of five years if the person committing the robbery used a firearm. The code section specifically sets forth that it shall apply even in those cases where the use of a weapon is an element of the offense.

information and the commencement of the trial. There is no merit to this contention.

It is conceded that under Penal Code, section 1382, unless good cause is shown to the contrary, the court must dismiss the action when a defendant is not brought to trial within 60 days after the filing of the information. However, it is equally true that, pursuant to Penal Code, section 1385, the court may, either on its own motion or upon the application of the prosecuting attorney and in furtherance of justice, order an action to be dismissed. It is well settled that the dismissal of a felony prosecution under the above cited sections does not bar a prosecution for the same offense (Pen. Code, § 1387; *People* v. *MacCagnan* (1954) 129 Cal.App.2d 100, 112 [276 P.2d 679]), and the 60-day period is reinstated after the filing of the new information or indictment whether or not a new or different charge is involved (*People* v. *Allen* (1963) 220 Cal.App.2d 796, 800 [34 Cal.Rptr. 106]; *People* v. *Wilkes* (1960) 177 Cal.App.2d 691, 697 [2 Cal.Rptr. 594]).

In the instant case the original information was filed against appellant on February 18, 1971, but upon motion of the district attorney was dismissed by the trial court in the interest of justice on April 15, 1971. Thereafter, a second information was filed on May 20, 1971, charging appellant virtually with the same offenses as were charged in the original information. The jury trial was commenced on July 14, 1971. Since the dismissal in furtherance of justice constitutes good cause within the meaning of Penal Code, section 1382, and since under the foregoing authorities the filing of a new information reinstated the 60-day period, it is beyond dispute that appellant here was brought to trial within the statutory period. Consequently, his right to a speedy trial has not been violated.

In addition, appellant failed to pursue the proper remedy—petition for a writ of mandate—upon denial of his motion to dismiss (*People* v. *Wilson* (1963) 60 Cal.2d 139, 149 [32 Cal.Rptr. 44, 383 P.2d 452]). When the issue of speedy trial is raised on appeal after conviction it must be treated like any other error in procedure before trial, i.e., appellant must show that the error was prejudicial (Cal. Const., art. VI, § 4½; *People* v. *Wilson, supra*, p. 152). Here appellant has shown none.

The judgment is hereby modified by striking therefrom the following language: "Defendant is further sentenced to State Prison for the term

prescribed by law on the 1st & 5th counts on the arming and use clauses." (*People* v. *Floyd, supra,* 71 Cal.2d at p. 884.)

As so modified the judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1972.