[Crim. No. 21740. Oct. 22, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDOLFO BUSTAMANTE, Defendant and Appellant.

COUNSEL

Paul T. Suzuki, under appointment by the Supreme Court, for Defendant and Appellant.

James R. Jenner, Public Defender (Alameda), Jay B. Gaskill, Assistant Public Defender, Michael Samuel Ogul, Quin Denvir, State Public Defender, Jean R. Sternberg and Gail R. Weinheimer, Deputy State Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Carol Wendelin Pollack, Marc E. Turchin and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

Herb Jackson, District Attorney (Sacramento), and George M. Hendrickson, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

TOBRINER, J.—*United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], established the right of a defendant under the federal Constitution to the assistance of counsel at a pretrial lineup. In *People* v. *Fowler* (1969) 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643], we followed the reasoning of *Wade* to hold that defendant is entitled to counsel at a preindictment lineup; in *Kirby* v. *Illinois* (1972) 406 U.S. 682 [34 L.Ed.2d 411, 92 S.Ct. 1877], however, the United States Supreme Court limited the right to counsel to postindictment

lineups.[1] We therefore face, as a matter of first impression before this court, the question whether under the California Constitution a California defendant has a right to counsel which extends to preindictment lineups.

We have concluded that we should adhere to the position we took in *Fowler*—that the right to counsel encompasses preindictment lineups—and we rest that position on the California Constitution. As we shall explain, judicial recognition of the right to counsel at a lineup arose from appreciation of the proverbial unreliability of eyewitness identification of strangers, and of the dangers that improper, inadvertent or deliberate suggestion at a lineup will irradicably influence identification testimony. Defense counsel, if present at the lineup, could observe irregularities, detect suggestion, and prepare for cross-examination of the identifying witnesses. Because the danger of invalid suggestion and misidentification equally characterizes and applies both to preindictment and postindictment lineups, we conclude that defendant's right to counsel should not be limited to postindictment lineups.

In the present case, defendant Bustamante appeals from a conviction for robbery and various other crimes. He asserts that he was denied the right to counsel at a preindictment lineup at which a witness to the robbery identified him. Applying the principles established in *Fowler* and reaffirmed in this opinion, we reverse the robbery conviction and remand the matter to the trial court to determine if the witness' testimony rests upon an independent ground untainted by the lineup identification. Since that identification affects only the robbery count, we affirm the conviction on all other counts.

## I. *Statement of Facts*

Charles Grosskopf testified that on March 13, 1979, he returned to his apartment to find two men, a black and a hispanic, inside the apartment. The black man held him while the hispanic took his wallet. The hispanic demanded more money; when Grosskopf said that he had none, the hispanic stabbed Grosskopf. At the preliminary hearing, Grosskopf identified defendant as the person who stabbed him. He repeated that identification at trial.

---

[1] For convenience—because it corresponds to the language of *Wade* and *Kirby*—we shall generally describe *Kirby* as distinguishing between "preindictment" and "postindictment" lineups. Although we describe our decision in terms of the right of a defendant to counsel at a "preindictment" lineup, our holding applies equally to felony prosecutions initiated by information and to misdemeanor prosecutions.

Joseph Zimmerman also testified at trial that he observed a black and a hispanic enter the apartment building and go upstairs. Five to eight minutes later he encountered Grosskopf bleeding from a knife wound. After defendant was arrested but before charges were filed, Zimmerman identified him at a lineup. Although defendant had requested counsel, none was provided at the lineup. The admissibility of Zimmerman's trial testimony identifying defendant is the principal issue on this appeal.

Matthew Ozaki testified that on March 21, 1979, someone broke into his apartment and took a jacket, two guns, a wallet, and other items. Later that day defendant was arrested for being under the influence of narcotics. A subsequent search of defendant's person and lodging turned up a gun, knives, personal property belonging to Grosskopf and Ozaki, and quantities of cocaine and concentrated cannabis.

Prior to trial, defendant moved to challenge Zimmerman's identification on the ground that defendant had been refused his right to counsel. The trial court denied the motion. Defendant renewed his efforts to exclude the identification testimony at trial. In addition, he called as witnesses two women who had seen the black and hispanic enter and leave the building; both identified defendant at the lineup but said they were not certain of their identification.

The jury convicted defendant of count I, robbery of Grosskopf, and found as aggravating factors that he inflicted great bodily injury (see Pen. Code, § 12022.7), that the victim was 60 years of age or over (see Pen. Code, § 1203.09), and that defendant personally used a deadly weapon (see Pen. Code, § 12022, subd. (b)). In connection with the Ozaki matter, defendant was acquitted of burglary (count II) and theft of a gun (count III), but convicted of receiving stolen property (count IV). Defendant was also convicted of being an ex-felon in possession of a firearm (count V), possession of cocaine (count VI), and possession of concentrated cannabis (count VII).

The trial court sentenced defendant to the upper term of five years for robbery, with a three-year enhancement for the infliction of great bodily injury and a one-year enhancement for the use of a deadly weapon. It further imposed consecutive sentences of one-third of the middle term on counts IV, V, and VI, and a concurrent term for count VII.

Defendant appeals from the judgment. His principal contention relates only to the robbery conviction. He urges that the court erred in admitting the identification testimony of Zimmerman because that witness first identified him at a lineup in which he was denied the right to counsel.

II. *Under article I, section 15 of the California Constitution, a defendant has the right to assistance of counsel at a preindictment lineup.*

We first examine this case from the perspective of the history of judicial rulings from the date of the rendition of *United States* v. *Wade, supra,* 388 U.S. 218, to the present. In *Wade,* the United States Supreme Court developed constitutional limits as to the admissibility of identification testimony. The witnesses in that case had first identified the defendant at an FBI lineup staged 15 days after counsel had been appointed for defendant; counsel was not notified of, or present at, the lineup. The court ruled that defendant was entitled to counsel at a post-indictment lineup, and consequently that the identification testimony should not have been admitted unless the prosecution could show that the testimony originated from an independent source, untainted by the improper lineup.[2]

Relying upon cases defining the defendant's right to counsel under the Sixth Amendment (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), the court pronounced a general principle: that a defendant enjoys a right to counsel at every "critical stage" in the prosecution. (P. 227 [18 L.Ed.2d, p. 1157].) It then focused on two problems in particular: the danger that suggestion, intentional or unconscious, will influence the witness' identification; and the difficulty in reconstructing the manner and mode of lineup identification at trial, so that defense counsel would be unable to cross-examine the witness on that subject. These problems led the court to conclude that "there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which

---

[2]In a companion case, *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], the court ruled that testimony at trial to the effect that witnesses identified the defendant at a postindictment lineup, which was held in violation of defendant's right to counsel, was inadmissible. Since such testimony derives directly from the improper lineup, it cannot be saved by proving that it came from an independent, untainted source. (See 388 U.S. at pp. 272-274 [18 L.Ed.2d at pp. 1186-1187].)

he was 'as much entitled to such aid [of counsel] . . . as at the trial itself.' (*Powell* v. *Alabama*, 287 U.S. 45, 57.)" (Pp. 236-237 [18 L.Ed. 2d, pp. 1162-1163].)

In *People* v. *Fowler* (1969) 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643], we concluded that the rules established in *Wade* and *Gilbert* governed *preindictment* lineups. Justice Sullivan, writing for the majority, noted that "[t]he presence or absence of those conditions attendant upon lineups which induced the high court to term such proceedings 'a. critical stage of the prosecution' at which the right to counsel attaches . . . is certainly not dependent upon the occurrence or nonoccurrence of proceedings formally binding a defendant over for trial. A lineup which occurs prior to the point in question may be fraught with the same risks of suggestion as one occurring after that point, and may result in the same far-reaching consequences for the defendant." (P. 342.) (Fns. omitted.)[3]

Although lower federal courts also interpreted *Wade* and *Gilbert* to apply to preindictment lineups (see *Wilson* v. *Gaffney* (10th Cir. 1972) 454 F.2d 142, 144; *United States* v. *Greene* (D.C. Cir. 1970) 429 F.2d 193, 196; *United States* v. *Phillips* (9th Cir. 1970) 427 F.2d 1035, 1037), when the issue reached the United States Supreme Court, that court disagreed. In *Kirby* v. *Illinois* (1972) 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], the plurality opinion of Justice Stewart, noting that *Wade* and *Gilbert* required counsel only at a "critical stage of the criminal prosecution" (p. 683 32 L.Ed.2d, p. 414], citing *Gilbert* v. *California, supra*, 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186]), held that for this purpose the "prosecution" does not commence until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

Two California Court of Appeal decisions assumed that *Kirby* overturned *Fowler* and consequently that defendants were no longer entitled

---

[3]The *Wade* court had suggested that regulations which eliminated the risks of abuse and unintentional suggestion at lineups would remove the basis for regarding such confrontations as a "critical" stage of the prosecution (388 U.S. at p. 239 [18 L.Ed.2d at p. 1164]); thus the Attorney General in *Fowler* argued that the police regulations in effect at the *Fowler* lineup accomplished that purpose. We rejected that contention, noting that counsel could observe whether such protective regulations were followed and could aid in reconstructing the lineup procedure to detect unintentional suggestiveness or inadvertent use of unfair techniques. (P. 349 of 1 Cal.3d.) Accordingly, we held that the identification testimony against Fowler could not be admitted unless the prosecution could prove that it derived from an independent and untainted source.

to counsel at a preindictment lineup. (*People* v. *Faulkner* (1972) 28 Cal.App.3d 384, 390 [104 Cal.Rptr. 625]; *People* v. *O'Roy* (1972) 29 Cal.App.3d 656, 662 [105 Cal.Rptr. 717].) When that issue reached this court, however, we failed to reach a majority consensus. In *People* v. *Chojnacky* (1973) 8 Cal.3d 759 [106 Cal.Rptr. 106, 505 P.2d 530], the opinion of Justice Burke, joined by Chief Justice Wright and Justice McComb, asserted that *Fowler* was no longer controlling after the decision of the United States Supreme Court in *Kirby*. (P. 764.) Justice Mosk, concurring, maintained that because the lineup in *Chojnacky* took place before the filing of the decision in *Kirby*, its validity must still be judged under the *Wade-Gilbert* rules as applied in *Fowler*. He concluded, however, that the presence of counsel at the lineup satisfied the *Wade-Gilbert* rules even though counsel was not informed which man in the lineup was his client. (P. 768.) I joined the dissenting opinion of Justice Sullivan, which stated not only that *Fowler* did control but also that the police refusal to disclose to counsel the identity of his client rendered the identification testimony inadmissible. (Pp. 769-770.)

Since *Chojnacky* failed to settle the issue, the Courts of Appeal in subsequent cases continued to assume that a defendant had no right to counsel at a preindictment lineup. (*People* v. *Kilpatrick* (1980) 105 Cal.App.3d 401, 411 [164 Cal.Rptr. 349]; *People* v. *Williams* (1977) 68 Cal.App.3d 36, 42 [137 Cal.Rptr. 70];[4] *People* v. *Strawder* (1973) 34 Cal.App.3d 370, 378 [108 Cal.Rptr. 901]; but see *People* v. *Johnson* (1978) 85 Cal.App.3d 684 [149 Cal.Rptr. 661], which assumed arguendo that defendant was erroneously denied counsel at a preindictment lineup, but held the error nonprejudicial.) Presiding Justice Roth, dissenting in *Johnson*, argued that a defendant enjoyed a more extensive right to counsel under the California Constitution than the limited federal right circumscribed by *Kirby* (see 85 Cal.App.3d at p. 699), but no majority opinion considered that proposition. Thus today we approach the question of a defendant's right to counsel at a lineup under the California Constitution as a question of first impression.[5]

---

[4]*Williams* stated that under *Kirby* a defendant ordinarily had no right to counsel at a preindictment lineup, but established an exception when the arraignment was unreasonably delayed.

[5]A majority of state court decisions follow *Kirby* in limiting a defendant's right to counsel at a lineup. Most decisions do not consider the alternative of independent state constitutional rights; among the few which do, and nevertheless resolve to follow *Kirby*, are *State* v. *Boyd* (Me. 1972) 294 A.2d 459, 463; *State* v. *Delahunt* (1979) — R.I.— [401 A.2d 1261, 1265]; *State* v. *Taylor* (1973) 60 Wis.2d 506 [210 N.W.2d 873, 882].

Two state courts have relied on state constitutional grounds to grant a right to counsel at preindictment lineups. (*Blue* v. *State* (Alaska 1977) 558 P.2d 636, 641; *People* v.

■ In construing the Bill of Rights in the California Constitution, we give respectful consideration to decisions of the United States Supreme Court construing federal constitutional guarantees, but we are not bound to follow those decisions. (*People* v. *Longwill* (1975) 14 Cal.3d 943, 951, fn. 4 [123 Cal.Rptr. 297, 538 P.2d 753].) As we stated in *People* v. *Chavez* (1980) 26 Cal.3d 334, 352 [161 Cal.Rptr. 762, 605 P.2d 401]: "[J]ust as the United States Supreme Court bears the ultimate judicial responsibility for determining matters of federal law, this court bears the ultimate judicial responsibility for resolving questions of state law, including the proper interpretation of provisions of the state Constitution. [Citations.] In fulfilling this difficult and grave responsibility, we cannot properly relegate our task to the judicial guardians of the federal Constitution, but instead must recognize our personal obligation to exercise independent legal judgment in ascertaining the meaning and application of state constitutional provisions."

A blind following of Supreme Court precedent would frustrate our ability to protect rights enjoyed by Californians and to maintain consistency in California law. (See Mosk, *The State Courts*, in American Law: The Third Century (Schwartz edit. 1976) 213, 217-220.) If the United States Supreme Court hands down a decision which limits rights established by earlier precedent in a manner inconsistent with the spirit of the earlier opinion, it may become incumbent upon this court to employ the California Constitution to maintain consistent principles protecting those rights. (See *People* v. *Disbrow* (1976) 16 Cal.3d 101, 115 [127 Cal.Rptr. 360, 545 P.2d 272].) "Respect for our Constitution as 'a document of independent force' [citation omitted] forbids us to abandon settled applications of its terms every time changes are announced in the interpretation of the federal charter." (*People* v. *Pettingill* (1978) 21 Cal.3d 231, 248 [145 Cal.Rptr. 861, 578 P.2d 108].)

Consequently, even though *United States* v. *Wade, supra*, 388 U.S. 218 held that the federal Constitution grants defendants a right to counsel at lineups, we are free to determine as an issue of first impression whether the California Constitution grants a similar right. ■ If we determine that defendants have a right to counsel at lineups under

---

*Jackson* (1974) 391 Mich. 323 [217 N.W.2d 22, 27].) The Pennsylvania Supreme Court reached nearly the same result by holding that, under Pennsylvania law, the initiation of criminal proceedings—under *Kirby*, the point at which the right to counsel arises—commences with the arrest. (*Commonwealth* v. *Richman* (1974) 458 Pa. 167 [320 A.2d 351, 353].)

the state Constitution, we must determine whether that right is limited to postindictment lineups as indicated in *Kirby*, or extends to all lineups in accord with the California practice following *Fowler*.

We first consider whether article I, section 15 of the California Constitution, which guarantees a defendant "the assistance of counsel," imports a right to have counsel present at a lineup. Concluding that the constitutional provision includes such a right, we must consider the question whether that right should be limited, as suggested by *Kirby*, to postindictment lineups.

Judicial recognition of the right to counsel at a lineup originated as a response to the recognized unreliability of eyewitness identification. As a leading scholar then stated, "The identification of strangers is proverbially untrustworthy." (Frankfurter, The Case of Sacco and Vanzetti (1927) p. 30.) Another commentator, Judge Jerome Frank, concluded that "Perhaps erroneous identification of the accused constitutes the major cause of the known wrongful convictions." (Frank & Frank, Not Guilty (1957) p. 61.)[6]

In light of these dangers, a properly conducted lineup, staged as soon as feasible after the crime, and containing a number of persons whose general appearance resembles the defendant, becomes an invaluable police technique to enhance the reliability of identification. That procedure, however, clearly makes the lineup a "critical stage of the prosecution" within the language of *United States* v. *Wade, supra*, 368 U.S. 218, 237 [18 L.Ed.2d 1149, 1162-1163], for when a witness has made a positive identification at a lineup, he is unlikely to change his mind. "[O]nce any identification decision is made it may well be 'irreparable.'" (*People* v. *Anderson, supra*, 205 N.W.2d 461, 485, italics omitted; see *United States* v. *Wade, supra*, 388 U.S. 218, 228 [18 L.Ed.2d 1149, 1158]; cf. *Simmons* v. *United States* (1968) 390 U.S. 377, 383-384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967] (photographic lineup).) Identification testimony at trial, when defendant has counsel who may cross-examine the witness, may be unshakable if an earlier lineup identification has removed the witnesses' doubts and committed him to the proposition that defendant is the criminal in question.

---

[6]The Michigan Supreme Court, in an appendix to *People* v. *Anderson* (1973) 389 Mich. 155 [205 N.W.2d 461, 479-494], reviewed at length the psychological factors which render eyewitness identification unreliable, and cited the leading studies and articles on the subject. The court also reviewed the facts in three Michigan cases in which mistaken identification led to the conviction of innocent defendants.

As Justice Brennan stated in *Wade*, "A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that '[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined.' Wall, Eye-Witness Identification in Criminal Cases 26." (Pp. 228-229 [18 L.Ed.2d, p. 1158]; see Sobel, Eyewitness Identification (1972) § 3.01.) Moreover, as *Wade* and other cases pointed out, it is extremely difficult to reproduce the identification procedure at trial with sufficient precision to detect improper suggestion.

We therefore conclude that a pretrial lineup is a critical stage in the prosecution of a criminal case, and that ensuring the fairness of that lineup is crucial to the protection of innocent persons accused of crime. The more difficult question is whether the requirement of the presence of counsel will significantly alleviate the danger of mistaken identification.

Although counsel plays only a limited role at the lineup itself[7] his presence may still serve to protect the rights of the defendant. A requirement for counsel at lineups encourages the police to adopt regulations to ensure the fairness of the lineups (see Pulaski, *Neil v. Biggers: The Supreme Court Dismantles the Wade Trilogy's Due Process Protection* (1974) 26 Stan.L.Rev. 1097, 1101) and to follow those regulations (see *People v. Fowler, supra*, 1 Cal.3d 335, 348). The attorney may detect inadvertent suggestive actions not within the scope of protective regulations. Finally, counsel's observations will help him to prepare for cross-examination of the identifying witness and for argument at trial. (See *Blue v. State, supra*, 558 P.2d 636, 641; Read, *Lawyers at Lineups: Constitutional Necessity or Avoidable Extravagance?* (1969) 17 UCLA L.Rev. 339, 376.)

[7] As Justice Mosk explained in *People v. Williams* (1971) 3 Cal.3d 853, 860 [92 Cal.Rptr. 6, 478 P.2d 942] (dis. opn.), counsel "cannot rearrange the personnel, cross-examine, ask those in the lineup to say anything or to don any particular clothing or to make any specific gestures. Counsel may not insist law enforcement officials hear his objection to procedures employed, nor may he compel them to adjust their lineup to his views of what is appropriate. [Citation omitted.] [¶] At most, defense counsel is merely present at the lineup to silently observe and to later recall his observations for purposes of cross-examination or to act in the capacity of a witness. But the latter raises the complex trial circumstances, frowned upon by ethics of the profession, of the lawyer serving in the additional role of a testimonial witness."

We recognize that some jurists and commentators have urged that the presence of counsel is not necessarily the only way, or even the best way, to protect a defendant from mistaken identification. (See *United States* v. *Wade, supra*, 388 U.S. 218, 239 [18 L.Ed.2d 1149, 1164] (opn. of Brennan, J.); *id.*, at p. 262, fn. "*" (opn. of Fortas, J.); *People* v. *Fowler, supra*, 1 Cal.3d 335, 348-349; see generally Sobel, Eye-Witness Identification (1972) § 56, proposing standards for conducting a fair lineup; Pulaski, *op. cit., supra*, 26 Stan.L.Rev. 1097, 1101-1102; Read, *op. cit. supra*, 17 UCLA L.Rev. 339, 379-393 (suggesting a form regulation).)

We need not, however, decide today whether regulations can be promulgated which are so effective in protecting the defendant's rights that presence of counsel is no longer constitutionally compelled.[8] We have previously indicated that the pretrial lineup is a critical stage in California criminal prosecutions. Since the presence of counsel can contribute significantly to the protection of his client from misidentification, defendant is entitled to have counsel present to assist him at that critical juncture. We therefore hold that, a California defendant's right to assistance of counsel includes the right to counsel at a pretrial lineup.

We turn to the question whether defendant's right to counsel should be limited, as in *Kirby*, to postindictment lineups. As we noted earlier, the plurality opinion in *Kirby* did not deny that a preindictment lineup may be critical to the defense of a criminal case and may result in intractable misidentification of an innocent accused; it held, instead, that defendant has no right to counsel until the "prosecution" commences with the filing of formal charges.

We think this a wholly unrealistic view, and note that the commentators have generally condemned *Kirby*'s limitation of the right to counsel. (See Pulaski, *op. cit., supra*, 26 Stan.L.Rev. 1097, 1102 and fn. 39.) At least from the rendition of *People* v. *Dorado* (1965) 62 Cal.2d

---

[8]The record on appeal does not indicate the police regulations, if any, which governed the lineup in the present case, but does provide a description of the procedures employed. The police displayed six hispanics, including defendant, and six blacks to the witnesses, who marked their identifications on cards supplied for the purpose. The record of the lineup consists of color photographs, front and side view, of the participants. (Presumably the cards marked by the witnesses were also available, but were not offered into evidence.) We have no record, other than the testimony of the persons at the lineup, whether anything was said at the lineup by the suspects, the police, or the witnesses.

338, 346 [42 Cal.Rptr. 169, 398 P.2d 361], we have recognized that a defendant may require the assistance of counsel before formal charges have been filed. Indeed, to limit the right to counsel at a lineup to postindictment lineups would as a practical matter nullify that right. "The defendant who most needs protection from erroneous identification is one who is implicated primarily or solely by eyewitness testimony. Yet, because of this lack of noneyewitness evidence, an identification of the defendant in a lineup or showup would be necessary to justify formal charges or arraignment. Consequently, the crucial confrontation necessarily will be held before the initiation of formal judicial proceedings when the defendant can be deprived of counsel. Thus *Kirby* removes the protective effects of counsel's presence precisely when the danger of convicting an innocent defendant upon a mistaken identification is greatest. Furthermore, after *Kirby*, the policy may defeat the aims of *Wade* and *Gilbert* in *any* case simply by delaying formal charges and holding the lineup in the absence of defense counsel." (Note (1977) 29 Stan.L.Rev. 969, 996, fns. omitted.)

The Attorney General argues that requiring counsel at lineups, without the *Kirby* limitation, will hamper legitimate police investigation. The officers, he points out, would be required to advise defendant of his right to counsel, determine whether he wants counsel, and arrange for counsel if defendant is indigent. Further delay may ensue if counsel, retained by the defendant or secured by the police, cannot come promptly to the site of the lineup. If the right to counsel at a lineup is limited to postindictment lineups, defendant will generally be represented by counsel of record, which may make arranging for the presence of counsel at the lineup an easier task.

Although extending the right to counsel to preindictment lineups will thus impose an additional burden upon the police, and may delay the staging of the lineup, these consequences do not appear substantial enough to justify denying defendant this protective right. The burden of securing counsel is exactly the same as that which police departments must assume if they wish to question a defendant who invokes his right to counsel under *Miranda* v. *Arizona, supra*, 384 U.S. 436; it is a requirement which governed all California lineups during the five years between *Wade* and *Kirby*—without, so far as we are aware, significantly impeding police investigation. The delay involved in securing counsel will generally be a matter of hours at most. If conditions require immediate identification without even minimal delay, or if counsel cannot be

present within a reasonable time, such exigent circumstances will justify proceeding without counsel.[9]

We conclude that we should adhere to the views stated in *People v. Fowler* (1969) 1 Cal.3d 335 [82 Cal.Rptr. 363, 461 P.2d 643]. We hold that article I, section 15 of the California Constitution, affords to a defendant the right to the presence of counsel at a preindictment lineup. Any implication to the contrary in the Court of Appeal decisions cited earlier (*People v. Kilpatrick, supra,* 105 Cal.App.3d 401; *People v. Williams, supra,* 68 Cal.App.3d 36; *People v. Strawder, supra,* 34 Cal.App.3d 370; *People v. Faulkner, supra,* 28 Cal.App.3d 384; *People v. O'Roy, supra,* 29 Cal.App.3d 656) are disapproved.

■ We turn now to two subsidiary issues: the retroactive effect, if any, to be given our holding, and the impact of that holding upon the disposition of the present appeal.

In recent years, when we have overruled decisions on criminal procedure upon which prosecutors and lower courts have relied, we have often declared that our holding is prospective except as to the individual defendant whose appeal is being adjudicated by the court (see *People v. Cook* (1978) 22 Cal.3d 67, 99, fn. 18 [148 Cal.Rptr. 605, 583 P.2d 130] and cases there cited). As the public defender points out, we have hitherto applied that doctrine only when we have overruled an earlier decision of this court. In the present case, our decision upholding a right to counsel at preindictment lineups does not conflict with any prior precedent of this court. Nevertheless, because the *Chojnacky* court failed to reach a majority, the Courts of Appeal were compelled to decide that issue without guidance from this court; they decided against extending the right to counsel to preindictment lineups; police, prosecutors, and courts have placed extensive reliance upon these decisions. We believe that the rationale underlying prospectivity in *Cook* and similar cases applies in the present situation. Accordingly, with the exception of the present appeal, the holding in this opinion should apply only to lineups held after the date of finality of this opinion.

■ In the present appeal, our holding would require the exclusion of the identification testimony of Zimmerman unless that testimony

---

[9]As stated in *Blue v. State, supra,* 558 P.2d 636, 642 a suspect in custody "is entitled to have counsel present at a pre-indictment lineup unless exigent circumstances exist so that providing counsel would unduly interfere with a prompt and purposeful investigation."

rests on a basis independent from and untainted by the improper lineup. (See *United States v. Wade, supra,* 388 U.S. 218, 240-242 [18 L.Ed.2d 1149, 1164-1166].) The trial court rendered no finding sufficient to permit admission of the testimony on this basis. The Attorney General argues, however, that even if Zimmerman's testimony is excluded the robbery conviction should be upheld on the basis of the other evidence against defendant.[10]

The robbery conviction finds support in the identification testimony of Grosskopf, the tentative identifications by the two women called as defense witnesses, and the discovery of Grosskopf's wallet in defendant's room. The testimony of Zimmerman, however, was the strongest single item of prosecution evidence, since Zimmerman picked defendant out of a lineup immediately after the defendant's arrest, while Grosskopf did not identify defendant until the preliminary hearing when defendant was not arrayed with persons of similar appearance.[11] In the absence of Zimmerman's testimony we think it reasonably probable that the jury would not have convicted defendant on count I of the information.

 When the admissibility of evidence turns on an issue of fact—an issue unresolved by the trial court because its significance was established by a subsequent appellate opinion—the appellate court need not reverse the conviction outright, but can remand the cause for resolution of the factual issue. (See *People v. Vanbuskirk* (1976) 61 Cal.App.3d 395, 405 [132 Cal.Rptr. 30]; *People v. Ingram* (1978) 87 Cal.App.3d 832, 840-841 [151 Cal.Rptr. 239] and cases there cited.) In the present setting, the admissibility of Zimmerman's testimony depends on whether it derives from an independent source, untainted by the counselless lineup—a factual issue which the lower court, relying on *Kirby,* failed to resolve. Accordingly, the judgment against defendant on count I of the information should be reversed and remanded for the trial court to determine that issue. If it decides in favor of defendant and excludes the testimony, defendant would be entitled to a new trial; if it decides in favor of the People, the court should reinstate the judgment previously rendered.

---

[10]It is clear that the admission of Zimmerman's testimony is not prejudicial as to counts IV, V, VI, and VII of the information.

[11]The record indicates that Zimmerman may have told Grosskopf of Zimmerman's identification of defendant before Grosskopf identified defendant; if so, that fact would undercut Grosskopf's identification testimony as an independent support for the conviction.

Defendant's other contentions were fully addressed by the Court of Appeal. We agree with that court's resolution of the issues there presented, and therefore reject those contentions as without merit. (See *People* v. *James* (1977) 19 Cal.3d 99, 118 [137 Cal.Rptr. 447, 561 P.2d 1135].)

The judgment with respect to count I (robbery) is reversed, and the cause remanded for further proceedings in accord with the views expressed in this opinion. The judgment as to count IV (receiving stolen property), count V (possession of a gun by ex-felon), count VI (possession of cocaine), and count VII (possession of concentrated cannabis) is affirmed.[12]

Mosk, J., Newman, J., and Wiener, J.,* concurred.

**BIRD, C. J.**—I concur in the judgment of the court but I must dissent from two assertions in the majority opinion. It is suggested in dictum that counsel's role at lineups should be a passive one. From this conclusion, the majority go on to suggest that counsel might be constitutionally replaced by proper regulations governing lineups. (Maj. opn., *ante*, at pp. 99-100.)

The presence of counsel at a lineup is vital to counsel's preparation for the cross-examination of witnesses at trial. (Maj. opn., *ante*, at p. 99; *People* v. *Fowler* (1969) 1 Cal.3d 328, 348-349 [82 Cal.Rptr. 363, 461 P.2d 643]; *United States* v. *Wade* (1967) 388 U.S. 218, 227 [18 L.Ed.2d 1149, 1157, 87 S.Ct. 1926].) This court has recognized that regulations for lineups are not an adequate substitute for the presence of counsel. Regulations cannot protect the constitutional rights of an accused to meaningful cross-examination and the effective assistance of counsel.[1] Studies have also indicated that the presence of an observer

---

[12]Under the Determinate Sentencing Act, a consecutive sentence imposed for a subordinate term is fixed at one-third of the middle term of imprisonment. (Pen. Code, § 1170.1.) If the conviction underlying the principal term is reversed, it then becomes necessary for the trial court to select the next most serious conviction to compute a new principal term. Thus, whenever an appellate court reverses a conviction for the principal term, the trial court retains jurisdiction over the entire cause as needed to make the necessary modifications in the sentence. In the present case, the trial court retains jurisdiction over counts IV, V, VI, and VII, as well as over count I, and can modify the sentence as to these counts if the ultimate disposition of count I requires such action.

*Assigned by the Chairperson of the Judicial Council.

[1]In *People* v. *Fowler, supra,* 1 Cal.3d at pages 348-349, this court discussed the constitutional infirmity of a highly regulated lineup that included still photographs of the

at an identification procedure can reduce unintentional bias. (Levine & Tapp, *The Psychology of Criminal Identification: The Gap from Wade to Kirby* (1973) 121 U.Pa.L.Rev. 1079, 1114, 1125, and studies cited at fn. 183.)

The majority opinion contains the unfortunate implication that the need for counsel might be obviated if regulations for lineups are adopted. (Maj. opn., *ante*, at p. 99.) In my view, the requirement that counsel be present and the need to set down regulations are not mutually exclusive.

Legal scholars have repeatedly recognized the crucial value of regulations governing lineups *and* the importance of the presence of counsel. "[E]ven a strictly applied [standard against suggestive procedures] would not be an adequate substitute for counsel in confrontations held before the initiation of 'adversary judicial proceedings.' Due process cannot accomplish the same goals that counsel can." (Comment, *The Right to Counsel: Attachment Before Criminal Judicial Proceedings?* (1979) 47 Fordham L.Rev. 810, 831; see also Levine & Tapp, *op. cit. supra*, 121 U.Pa.L.Rev. 1079, 1125: "It is not that the right to counsel should be abandoned. . . . It would, however, be most unfortunate if the presence of counsel produced a false sense of security which inhibited additional procedural reform.")

The right to the presence of counsel at a lineup is not an ill-considered measure which may be dispensed with if regulations are adopted. The requirement that counsel be present serves constitutional interests. The right to the effective assistance of counsel is involved. Videotapes and regulations cannot be substituted for such a basic constitutional right.

The suggestion that counsel may be replaced by rule and camera grows out of the majority's ill-conceived notion that counsel is merely a passive observer at lineups. This court has never enunciated such a role. (*People v. Fowler, supra*, 1 Cal.3d at p. 349, fn. 19.) Counsel cannot unreasonably be denied access to his own client, and, therefore, should in most cases be permitted to see his client prior to a lineup. (Cf. *People v. Chojnacky* (1973) 8 Cal.3d 759, 769 [106 Cal.Rptr. 106, 505 P.2d 530] [dis. opn. of Sullivan, J.].) Further, counsel can give valuable

lineup: "[Counsel's] opportunity for cross-examination on the basis of the cold regulations provided to him could amount to little more than shooting in the dark . . . ." (*Id.*, at p. 349.)

advice to an anxious client on how to conduct himself during the lineup so as to ensure its fairness. (Katz & Carter, Cal. Criminal Law Practice Series, Eyewitnesses Identification (1978) at p. 9; Levine & Tapp, *op. cit. supra*, 121 U.Pa.L.Rev. at p. 1125.)

Further, counsel should be free to suggest changes so that a lineup is fair. The presence of counsel at the lineup also provides an opportunity to meet and interview eyewitnesses before a great deal of time has elapsed between their pretrial identifications and their in-court identifications.

Printed rules and a videotape camera do not a counsel make. A passive counsel is not necessarily an effective counsel at a lineup. If this court wants to ensure that identifications by eyewitnesses are fair and just, it should not discourage the participation of counsel who may be able to ensure that proper procedures are used.

Staniforth, J.,* concurred.

**RICHARDSON, J.**—I respectfully dissent. Relying upon the California Constitution, the majority holds that suspects facing preindictment or prearraignment identification lineups are entitled to the selection or appointment, presence and assistance of counsel. The majority thereby unnecessarily extends the right of counsel beyond the requirements of the federal Constitution as interpreted by the United States Supreme Court. (See *Kirby* v. *Illinois* (1972) 406 U.S. 682 [34 L.Ed.2d 411, 92 S.Ct. 1877].) In my view, *Kirby* affords a sound basis for confining the right to counsel to lineups which occur *after* the defendant has been formally charged with a crime.

The majority ignores the forceful reasoning of Justice Stewart's plurality opinion in *Kirby* which carefully explains the significance of the filing of formal charges in the context of right to counsel: "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. [¶] It is this point,

---

*Assigned by the Chairperson of the Judicial Council.

therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. [Citations.] [¶] In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so. Less than a year after *Wade* and *Gilbert* were decided, the Court explained the rule of those decisions as follows: 'The rationale of those cases was that an accused is entitled to counsel at any "critical stage of the *prosecution*," and that a postindictment lineup is such a "critical stage."' (Italics supplied.) [Citation.] We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." (Pp. 689-690 [34 L.Ed.2d, pp. 417-418], fn. omitted.)

The People represent, and defendant does not contest, that the *Kirby* rule has been adopted by the following 37 states: Alabama, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin. Of those states examining the question, only four apparently have not accepted the rule. Thus, the statement in the majority opinion that "A majority of state court decisions follow *Kirby* ..." (*ante*, p. 96, fn. 5) is a considerable understatement.

A criminal *investigation* is not a criminal *prosecution*. Nonetheless, rejecting the decision in *Kirby*, the majority holds that a *preindictment* lineup is a "critical stage" of criminal proceedings, by reason of the "unreliability of eyewitness identification of strangers" and the "dangers that improper, inadvertent or deliberate suggestion at a lineup will irradicably influence identification testimony." (*Ante*, p. 92.) Such factors, however, do not warrant our departure from *Kirby*. Unreliable identifications can occur whether or not counsel is present. Moreover, any abuse of identification procedures, including improperly suggestive lineups, may be fully reviewed under applicable due process standards. (*Kirby*, 406 U.S. at pp. 690-691 [34 L.Ed.2d at p. 418]; *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967].) As stressed by the high court in *Kirby*, "*Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt

and purposeful investigation of an unsolved crime." (P. 691 [34 L.Ed. 2d, pp. 418-419].) We err in again deliberately tilting this balance against the People.

In the present case, complete photographs of the lineup and its participants (both front and side views) were taken and were made available to defense counsel at trial. The victims had told police officers that the suspects were a black and an Hispanic. Accordingly, the officers displayed at the lineup six blacks and six Hispanics to the witnesses, who marked their identifications upon cards supplied for that purpose. The procedures employed here certainly help to reduce the danger of suggestion at the lineup.

The presence of counsel at a lineup affords no absolute protection against unreliable or suggestive identifications. In the words of one commentator, "A review of the role of counsel at lineups indicates the limited nature of the services he can perform. *In fact, there are some indications that a lawyer's presence may hinder the effective use of the lineup as an investigatory technique.*" (Read, *Lawyers at Lineups: Constitutional Necessity or Avoidable Extravagence?* (1969) 17 UCLA L.Rev. 339, 394, italics added.) Indeed, considerable doubt exists as to the proper function of the suspect's counsel at a lineup, and "it would appear that defense counsel has no affirmative right to be active during the course of the lineup." (*People* v. *Williams* (1971) 3 Cal.3d 853, 860 [92 Cal.Rptr. 6, 478 P.2d 942] [dis. opn., by Mosk, J.]; see also *Read, supra,* at pp. 362-367.)

Given the passive role played by counsel at a lineup, it is not surprising that the vast majority of state courts have followed *Kirby.* There is a manifest need for the prompt and efficient identification of suspects following commission of a crime. Investigative leads may open and close very fast. The majority's new rule necessarily will cause needless and perhaps critical delays in this identification process. The suspect may not have counsel or he may be slow in selecting counsel. Once chosen, there may be financial or other complications in retaining counsel. Counsel may be on vacation or for varied reasons otherwise engaged. The majority's rejection of *Kirby* cannot but delay criminal investigations, and the delay may well be very appreciable. Meanwhile, this phase of the investigation grinds to a halt. Although the majority purports to recognize that "exigent circumstances will justify proceeding without counsel," (*ante,* p. 102), harried police personnel busily engaged

in an ongoing investigation are further shackled because they may well be unable accurately to determine whether or not a true "exigency" exists. This can further complicate and prolong law enforcement procedures without a reciprocal compensating benefit.

I have previously expressed my views concerning the propriety of selective reliance upon provisions of the California Constitution to avoid otherwise applicable decisions of the United States Supreme Court interpreting identical, or substantially similar provisions of the federal Constitution. (E.g., *People* v. *Disbrow* (1976) 16 Cal.3d 101, 118-121 [127 Cal.Rptr. 360, 545 P.2d 272] [dis. opn.].) I do not repeat those views here.

The court's *Kirby* rule is supported not only by the great weight of authority, but by common sense as well. The majority's departure from *Kirby* is unnecessary and unwise. I would affirm the judgment of conviction.

The petitions of both parties for a rehearing were denied November 19, 1981.