[Crim. No. 10852.   In Bank.   May 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSE A.
BERMUDEZ ROLON, Defendant and Appellant.

Erling J. Hovden, Public Defender, Charles A. Maple,
Floyd W. Davis and James L. McCormick, Deputy Public De-
fenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

SULLIVAN, J.—A jury found defendant guilty of burglary (Pen. Code, § 459) and of grand theft (Pen. Code, § 487). Defendant was sentenced to state prison for the term prescribed by law on the burglary count but was not sentenced on the grand theft count. He appeals from the judgment of conviction of burglary.

Defendant was charged with participating in the burglary of Phil's Typewriter Shop in Hollywood shortly after 3 a.m. on May 3, 1965. Three witnesses testified to observing the burglary in progress. All three heard the shop window being broken and observed two men removing typewriters from the store. The distance from which they viewed the burglars was variously estimated by the witnesses as between 15 and 70 feet, but all testified that their vantage point was separated by at least the distance of one store front from the burglars' activities. The lighting was described as good, but apt to be deceptive in making color distinctions.

Each of the witnesses testified that while one man handed typewriters from the area of the broken window, the other carried them to a red and white Buick and loaded them into the trunk. They identified defendant as the man who was loading the typewriters. However, the witness closest to the burglars (15 feet) expressed a reservation about this identification.[1] Two of the witnesses testified that the man at the window assumed the driver's position in the Buick.

The witnesses furnished the police with the automobile license number and a description of both the automobile and the burglars. Their descriptions of the two men were identical: about 30 years old, 5 feet 10 inches tall, 170 pounds, Latin type and dark wavy hair. They provided no description of the facial features of either man.

A police officer testified that he received the descriptions furnished by the witnesses over his patrol car radio and stopped the Buick about three miles from the typewriter shop less than an hour after the crime. William H. Fredericks was driving the car and defendant was riding as a passenger. A sales tag from one of the missing typewriters was found on the front seat floor mat, but no other evidence was found in the car or its trunk.

---

[1] Mr. Keith Acles testified, "I cannot be certain but he looks very much like the man."

Mr. Schwartz, the general manager of the typewriter shop, testified that only two typewriters were taken and identified the sales tag as having been attached to one of them.

William Fredericks, who had previously admitted his participation in the burglary, testified for the defense.[2] He stated that his accomplice was not defendant but a man named Manuel. He described Manuel as being Spanish-American, 5 feet 10 inches, 160-170 pounds and as having black, wavy hair, a description that also fit both defendant and Fredericks himself. Fredericks stated further that he, not his accomplice, was the man who loaded the trunk, that he carried only one typewriter handed to him by Manuel, and that Manuel carried the only other stolen typewriter with him into the front seat of the car. He testified that he and Manuel then secreted the stolen typewriters and parted company; that shortly thereafter while driving alone, he saw defendant, an acquaintance, on a street corner and offered him a ride; and that they were arrested just a few minutes later.

Two alibi witnesses testified for defendant. Mrs. Joan Bonadonna testified that she hosted a party at her apartment on the evening of May 2 and the morning of May 3, that she had known defendant for about two and a half years, that defendant was an invited guest at the party, that he did not leave until 3:30 a.m. and that the party broke up about 4 or 4:30 a.m.

Mr. William Murray, who had known defendant in a bartender-customer relationship for over a year, testified that he closed his bar around 2 a.m. and proceeded directly to Mrs. Bonadonna's apartment, arriving there not later than 3 a.m. He saw defendant at the party when he arrived. According to Murray, defendant did not leave until 4 or 4:30 a.m.

Defendant contends that the prosecutor committed prejudicial misconduct in making reference to a previous burglary conviction involving Fredericks and himself. The People do not argue that the prosecutor is innocent of misconduct in this respect, but contend that no prejudice resulted therefrom.

Defendant was charged with and admitted a prior conviction for violation of Penal Code, section 459. Penal Code, section 1025 provides: ''In case the defendant pleads not guilty, and answers that he has suffered the previous convic-

---

[2]Fredericks was tried separately, not as a codefendant at the instant trial.

tion, the charge of the previous conviction must not be read to the jury, *nor alluded to* on the trial." (Italics added.)

On cross-examination of William Fredericks by the prosecutor, the following colloquy occurred:

"Q. [By prosecutor] You were also convicted in Case 293207 of the charge of burglary, aren't [*sic*] you, sir?

"A. The number is not familiar to me.

"Q. Date of conviction, October 16, 1964, Superior Court, County of Los Angeles?

"A. October the 16th is not a date familiar to me.

"[Defense Counsel]: [I] would object to the question. . . . [H]e has the right to ask the defendant if he has been convicted of a felony. If the answer is yes, what felony and when. But I think beyond that—

"The Court: I think you are probably right. I will sustain the objection only because of the way it is framed. You can ask a direct question. . . . If the answer is yes, you are entitled to ask him what is the nature of the felony. If he answers yes I have been so convicted then when did it occur.

"Q. [By prosecutor] In Case 293207, William Harry Fredericks and Jose Bermude Z Rolon—

"[Defense Counsel]: If your Honor pleases—

"The Court: I will sustain the objection."

Defense counsel's motion for a mistrial based on the above was denied.

Defendant contends that the prosecutor's later question to Fredericks, "Sir, you have also been convicted or pled guilty in the case presently before the Court, haven't you, in the case of William Harry Fredericks and Jose Bermude Z Rolon, 304837?" served to aggravate the error by improperly insinuating a parallel between the two crimes by the form of his question.

"Section 1025 represents a fundamental declaration of public policy, and its provisions when relevant must be scrupulously observed by all prosecuting attorneys." (*People* v. *Spencer* (1963) 60 Cal.2d 64, 82 [31 Cal.Rptr. 782, 383 P.2d 134].) An improper reference to a prior conviction may be grounds for reversal in itself (*People* v. *Meyer* (1887) 73 Cal. 548 [15 P. 95]; *People* v. *Gallinger* (1963) 212 Cal.App. 2d 851 [28 Cal.Rptr. 472]; *People* v. *Hudgins* (1943) 59 Cal.App.2d 175 [138 P.2d 311]; *People* v. *Hobbs* (1940) 37 Cal.App.2d 8 [98 P.2d 775]) but is nonprejudicial "in the light of a record which points convincingly to guilt. . . ."

(*People* v. *Stinson* (1963) 214 Cal.App.2d 476, 482 [29 Cal.Rptr. 695].)

The prosecution introduced persuasive evidence of guilt in this case. However, defense witnesses testified to defendant's presence elsewhere than the scene of the crime at the time the crime was committed. These witnesses were unimpeached and their testimony was not rebutted except to point out that Mr. Murray had erred in his estimate of the time defendant had left the party. An admitted participant in the crime testified that his accomplice was one other than defendant and offered a physical description of his accomplice that raised the possibility of mistaken identity on the part of prosecution witnesses.

The reference in this case to the prior conviction was peculiarly apt to be prejudicial. The jury was made aware that the defense witness Fredericks and defendant were both charged with committing the burglary of Phil's Typewriter Shop. In attempting to impeach Fredericks, the prosecution directed attention to a prior joint conviction for a burglary the witness and defendant had committed. It is unlikely that the jury missed the arguably logical, but prejudicial, inference that the prior joint criminal activity of defendant and his witness was indicative of guilt in this case. Even with this improper information before it, however, the jury found it necessary to deliberate from noon of one day until midmorning of the next before returning a guilty verdict. In light of these facts it is reasonably probable that a result more favorable to defendant would have been reached had the improprieties not occurred. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) After an examination of the entire cause, including the evidence, we are of the opinion that the error complained of has resulted in a miscarriage of justice (Cal. Const., art. VI, § 13 ).

In view of our conclusion, we deem it unnecessary to discuss the other points raised by defendant since it is unlikely that they will recur on retrial.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., and Burke, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Roth in the

opinion prepared by him for the Court of Appeal in *People* v. *Rolon* (Cal.App.) 55 Cal.Rptr. 471. In my opinion there was no prejudicial error (Cal. Const., art. VI, § 13▮).