[Crim. No. 3283. Fourth Dist., Div. One. Mar. 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD LELAND BRASHEAR, Defendant and Appellant.

Gerald S. Mulder, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant Brashear appeals from a judgment imposing sentence following his conviction by jury verdict of second degree burglary and petty theft after prior conviction of a felony.

Defendant Donald Leland Brashear (Brashear) and his wife, Norma Jean Brashear (Mrs. Brashear), were accused in count one of an amended information of burglary in violation of Penal Code, section 459. In count three of the information, defendant was accused of petty theft after conviction of a felony (burglary) in violation of section 667, Penal Code. (Count two pertained to Mrs. Brashear, who is not appealing.) Brashear was charged also with a prior conviction in 1954 of the crime of first degree robbery.

On the day of trial, before the jury panel entered the courtroom, defendant pleaded not guilty as to counts one and three. He admitted the prior burglary conviction in 1958 which was alleged in count three, and a robbery conviction in 1954; both felony convictions had resulted in prison terms.

### THE EVIDENCE

At approximately 12 noon of December 11, 1967, Mary Meek (Meek), a store detective for Montgomery Ward in National City, observed defendant and his wife walking from the direction of the south entrance of the store in the middle aisle. She had also seen them in the store one-half to three-quarters of an hour earlier. Meek told another store detective, Mrs. Betty Felix (Felix) that she had seen the two, and then went about other business. Felix was in an observation post in the women's fashions department. This post is 10 feet above the floor and allows store detectives, apparently unseen, to view patrons through an air vent in the wall. Felix observed the two looking at dresses on the racks and also looking from side to side. Brashear and his wife then went to the children's department, the sporting goods department and the men's department, followed by Felix, who had left her observation post immediately after Brashear and Mrs. Brashear left the fashions department. In each department they picked up several items of merchandise, looked at them and put them

back. When they reached the men's department Felix went up into another observation post in that department that was behind a partition separating a stockroom from the salesroom. The partition was at an angle with the line of a series of four counters that ran from east to west, containing sweaters. Just northerly of the most westerly of those counters was the north outer doorway. Just to the south of the four sweater counters was a parallel line of counters of which three contained shirts and the second in the line east-west a cash register. Continuing easterly from the shirt counters were counters containing sport coats and jackets, and to the south of them a series of counters containing pants. Between the counters and separating counters from the walls were aisles. Men's suits hung alongside most of the partition between stockroom and salesroom.

At the same time that Felix went behind the partition, Meek took up a position at the southwesterly corner of the counter second from the east end of the line of shirt counters, diagonally opposite Felix. Brashear and Mrs. Brashear were now along the easterly side of the second from the east of the sweater counters. The sweater counters were of transparent glass. The line of sight distance from Felix to the two was approximately 8 feet. Brashear was about 2 feet to his wife's right, almost facing her, and with his back to the south at right angles to the aisle.

Both Felix and Meek testified to the following actions by Brashear and his wife: They saw him pick up a beige sweater and put it on the bottom shelf between him and his wife. They saw him lean into the counter (with his right side). Felix noticed that he was holding a brown sweater when he leaned into the counter. Mrs. Brashear rolled up the beige sweater and a blue one on top of which it had been placed, looked in both directions, and inserted the sweaters into her large purse. Brashear and his wife then moved to the other side of the same counter. Brashear once more stood with his side to the counter and his back to the south and leaned into the counter as his wife took a blue sweater from the bottom shelf and placed it in her purse.

At that point, Felix called the police from a telephone in the observation booth. She saw Meek, exited from the observation post, and joined with Meek in following Brashear and his wife through the nearby north doors of the store, through which they had gone. Defendants left the store directly without stopping at any other counter or paying for any merchan-

dise. Felix requested Mr. Dudik, a men's department sales clerk, to accompany her and Meek in order to apprehend defendants. The three then caught up with the Brashears, who were in the northeast parking lot walking together. Felix stated that she was a store detective and asked Mrs. Brashear for the merchandise in her purse. Mrs. Brashear at first ignored her, but when Felix repeated the demand opened her purse and handed Felix the three sweaters. When Felix asked the Brashears to return to the store, Mrs. Brashear said words to the effect, ''Well, you have your merchandise. We're leaving.''

Mr. and Mrs. Brashear then separated and commenced walking in different directions in the parking lot. A minute or two later two National City police cars arrived. Felix pointed out defendants to the two officers. Officer Soto and Felix apprehended Mrs. Brashear. Officer Nosal apprehended Brashear. Felix made a citizen's arrest of defendants at that time.

Brashear gave consent to a search of his car, a 1955 Cadillac, which was in the parking lot. The search by Felix revealed a coat and a pair of slacks under the front seat on the passenger side of the vehicle. The coat was identified by Montgomery Ward of National City as having come from a rack in the men's department of that store; the coat had not been sold. The slacks were not identified as having come from the store and were not therefore admitted into evidence.

At the police station, Brashear stated he didn't know the woman he'd been walking with; he had just met her, and he just happened to come into the store with her.

### DEFENSE TESTIMONY

Brashear testified that he and Mrs. Brashear had been married for eight years; he didn't see his wife take the sweaters and he knew nothing of the clothes found in his car; he didn't intend to screen his wife from observation if he leaned toward the counter; he was so shocked when his wife took the merchandise out of her purse at the request of the store detectives that he didn't know where he was going when they commenced walking in different directions; he did not remember whether or not he stated at the police station that he didn't know his wife; he and his wife had been separated during a part of the time they were in the store.

CONTENTIONS ON APPEAL

Brashear states his contentions on appeal as follows:

1. The court erred by reading to the jury the charge of defendant's prior conviction when it previously had been admitted.

2. The court erred by not declaring a mistrial after defendant's wife, a codefendant, failed to appear in court once the defense had rested.

## READING TO THE JURY THE CHARGE OF DEFENDANT'S PRIOR CONVICTIONS DESPITE PRIOR ADMISSION

Brashear admitted before the trial commenced the prior felony convictions of burglary and robbery alleged in the information. The trial judge then proceeded to read to the jury all of count three of the information including the allegation of a burglary conviction in 1958, resulting in a state prison term. The judge did not read the allegation as to a prior robbery conviction in 1954.

Sections 1025 and 1093 of the Penal Code provide in substance that where the defendant pleads not guilty to the primary offense, but admits prior convictions, the charge concerning previous convictions must not be read to the jury nor alluded to at the trial. That provision has been held to apply to allegations of a prior offense that has the effect of making the subsequent crime greater in degree (*People* v. *Gallinger*, 212 Cal.App.2d 851 [28 Cal.Rptr. 472], and cases cited therein; *People* v. *Cooks*, 235 Cal.App.2d 6, 12 [44 Cal.Rptr. 819]), but not to allegations of a prior crime that makes a subsequent act criminal that otherwise would not be criminal (*People* v. *Davenport*, 210 Cal.App.2d 335, 340 [26 Cal.Rptr. 753]); or where otherwise the fact of the prior conviction is an element of the offense charged (*People* v. *Oppenheimer*, 156 Cal. 733 [106 P. 74]).

To bring or to permit to be brought to the attention of the jury the fact of a prior conviction that was admitted by the defendant has been held reversible error. (*People* v. *Gallinger*, *supra*, 212 Cal.App.2d 851; *People* v. *Rolon*, 66 Cal.2d 690 [58 Cal.Rptr. 596, 427 P.2d 196].)

There is dictum in *People* v. *Rolon*, *supra*, 66 Cal.2d 690, 693-694, that the error need not compel reversal "in the light of a record which points convincingly to guilt." Accepting that as a correct statement of the law, we believe that the error of bringing the prior conviction to the attention of the

jury, in the absence of any purpose of prejudicing the jury, should be reviewed in the light of section 13 of article VI of the California Constitution.[1]

Of course, where the fact of the prior conviction is first brought to the jury's attention in cross-examination of the defendant who has voluntarily testified, he has no ground of complaint.

■ Respondent contends the error in the present case is of no consequence because Brashear took the witness stand and having done so made his credibility subject to attack by proof of both his prior felony convictions.

The error may not be so lightly dismissed. It is possible, as Brashear argues, that he might not have become a witness, knowing that his record would thus be laid open, but for the fact that the burglary conviction already had been brought to the jury's attention.

---

[1]No question as to the court's action was raised during the trial or by motion for new trial. The district attorney submitted certain instructions (CALJIC 241 [Rev.] and CALJIC 241-A [New]). Those instructions were not given.

On April 10, when it was not yet certain that Mrs. Brashear would not return, the court made the following observations:

"In reviewing our previous proceedings, and particularly in view of the fact that Norma Jean Brashear didn't testify, I checked back to see what we did when we were in chambers or when we were in session before the jury were present, and the Clerk, in questioning the defendant Norma Brashear, said:

'THE CLERK: As to Count II, how do you plead, guilty or not guilty?
'DEFENDANT NORMA BRASHEAR: Not guilty.
'MR. GOLDEN: As to Count II, we admit the prior petit theft.'

"But she didn't do so personally, and in order to have that of record I think she should do so personally, or the People will doubtless want to produce evidence on the score. I think that was purely an oversight, but I think it is one that ought to be corrected to meet the situation; and if that is the situation, she can come in and do that.

"And then I wanted to tell you I was throwing out certain instructions, so that you would have that in mind in the course of your argument to the jury.

" . . . . . . . . . .

"I am not going to give 241 Revised or 241A new, for the reason that you get into this whole question about priors, et cetera. I think that is only material so far as the matter of punishment is concerned, and the jury are not concerned with that anyway.

"MR. NEELY: Those were only submitted by the People in case the priors were not admitted. That was the only reason.

"THE COURT: Now that we are going to have them admitted— Is there any question about her admitting the one you did personally instead of her?

"MR. GOLDEN: No, your Honor.

"THE COURT: Then I will not give 241 Revised or 241A, because that is clouding the issue. The only question is, did she commit petit theft here, and did he commit petit theft? That is the only issue. The other issue is the punishment to be administered, and the jury are not concerned with that."

In such a situation, he might reason thus: I may be able to testify in such a manner as to arouse reasonable doubt in the minds of the jurors; since my burglary conviction is already known, I will have nothing to lose, because even if found guilty I will still have a chance on appeal because of the reading by the court of the burglary conviction.

That argument, however, overlooks the conviction of armed robbery, a crime even less likely than burglary to find an indifferent reception in the minds of jurors.

The robbery conviction indicates also that the taking of the witness stand by Brashear was not the result of a decision sometimes made by defense counsel of putting a previously convicted defendant on the stand and then bringing out the fact of the prior conviction for the purpose of giving an appearance of frankness and truthfulness to all the defendant's testimony. In that circumstance, the risk incident to the disclosure of the prior conviction is weighed against the benefit of having the defendant present his explanation or denials. In the present case, there would have been no risk, except for the existence of the robbery conviction.

The fact that the risk incident to the admission of that conviction was taken in the case at bench is highly persuasive that Brashear testified not because his burglary conviction already had been mentioned, but because it was believed necessary that he attempt to explain away the evidence that otherwise must certainly have convicted him, even though it involved the discovery by the jury of the robbery conviction.

Undoubtedly defendant had strong reasons for testifying in the present case. The evidence demanded some denial or explanation on the part of defendant. For if defendant failed to deny knowledge of what his wife had done and of the presence of the jacket under the seat of his car, the jury would, beyond any reasonable doubt, have found him guilty of both charges.

While in testifying to the burglary conviction defendant did not shut himself off from the right to complain on appeal that the court erred in making an earlier mention of that conviction, we have weighed the error of the court against the convincing nature of the evidence to determine whether the error compels a reversal.

The circumstances that point unerringly to the guilt of the defendant need not be restated. They are such that after an examination of the entire cause, including the evidence, ". . . it is not reasonably probable that a result more favorable to

defendant would have been reached in the absence of the error. . . ." (*People* v. *Watson*, 46 Cal.2d 818, 837 [299 P.2d 243].)

### Brashear Suffered No Prejudice From the Court's Permitting the Completion of the Trial in the Absence of Mrs. Brashear

All parties had rested on April 8, 1968, when the court offered to continue the further trial until April 10, 1968, to permit any member of the jury to attend a memorial service for Dr. Martin Luther King, Jr., on April 9; the offer was accepted. When court convened on April 10, Mrs. Brashear was not present and her absence was unexplained.

The trial was continued from April 10, 1968, with two intervening sessions, until April 15, 1968. The trial court then heard arguments by Mrs. Brashear's counsel in opposition to continuing the trial, but decided to proceed. Counsel for all parties presented argument to the jury. The jury was instructed by the court in the following language: "[Y]ou will note that the defendant Norma Jean Brashear is not present in open court. You will not concern yourselves by reason of her absence, nor in anywise draw any inferences from her absence." Brashear contends that he was thereby prejudiced because the members of the jury could not help but infer his guilt as a result of his wife's absence; that he became the brunt of the jury's anger caused by the delay.

Brashear did not object at the time that he might be prejudiced by his wife's absence should the trial continue. We fail to see how he could have been prejudiced. The record shows he was released at the time of arraignment on his own recognizance and nothing indicates that he did not continue so. If the jury were to draw any inference from Mrs. Brashear's absence, it might be that she absented herself because she was guilty; that since Brashear continued to be present he was more likely than she to be innocent.

### Error in Sentencing

In one respect the judgment is in error. Sentence was imposed on both counts on which defendant was found guilty. Since both crimes were a part of a single transaction and with a single victim, it was error to impose a sentence on both. (*People* v. *McFarland*, 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449].)

The conviction of burglary in the second degree is the one

that carries the greater penalty. The judgment imposing sentence for that offense is affirmed. The judgment imposing sentence for the crime of petty theft after conviction of a prior burglary conviction is set aside.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied April 23, 1969.