Filed 12/7/20  P. v. Dominguez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ROBERT HENRY DOMINGUEZ,<br><br>　　Defendant and Appellant. | F077174<br><br>(Kern Super. Ct. No. BF167480A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Mark L. Christiansen and Jacquelyn E. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Kenneth O. Sokoler and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## SEE CONCURRING AND DISSENTING OPINION

Robert Henry Dominguez (defendant) appeals from a judgment of conviction of first degree murder and other crimes. He seeks reversal of the judgment based on the trial court's denial of a motion for a mistrial. In the alternative, defendant alleges multiple sentencing errors.

Defendant is entitled to relief based on retroactive application of Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136) and Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393). Due to the enactment of Senate Bill 136, prior prison term enhancements that were imposed under an earlier version of Penal Code[1] section 667.5, subdivision (b), are now invalid and must be stricken from the judgment. Due to the enactment of Senate Bill 1393, the matter will be remanded to allow the trial court to consider whether to strike prior serious felony conviction enhancements that were imposed under an earlier version of section 667, subdivision (a)(1). The judgment will otherwise be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 2017, defendant visited his wife at her home in Delano. The couple were separated but on speaking terms. The wife had not been expecting defendant, and she was surprised by his unusually friendly demeanor. Defendant did not stay long; he used the bathroom, chatted while moving about the tiny living space, and left after a couple of minutes.

Defendant knew that his wife owned a nine-millimeter handgun, which she kept in a backpack along with a loaded magazine containing Perfecta brand ammunition. Following his visit, defendant's wife noticed the backpack had been moved and discovered that her gun was missing. It had been in her possession the previous evening, so she concluded defendant must have taken it. At approximately 12:13 p.m., she contacted police to report that he had stolen her firearm. Defendant's wife estimated that

_____

[1] All undesignated statutory references are to the Penal Code.

2.

she placed the call within 15 minutes of defendant's departure. In other words, defendant left his wife's home around noon.

At approximately 12:25 p.m., Delano police officers responded to a report of a shooting at or near the residence of Victor Palomo and his girlfriend. The couple had been lying in bed when they heard someone calling out for Palomo. Palomo got up to investigate and was shot in the doorway of the residence. His girlfriend heard the gunshots but did not witness the shooting. What she saw was a man, whom she later identified as defendant, standing over Palomo. Defendant grabbed her by the hair, held a gun against her head, and threated to kill her if she "talk[ed]."

Palomo's girlfriend saw defendant flee in a black car, which she described as an older model Honda or Toyota. Police arrested defendant a few hours later. Palomo died from multiple gunshot wounds. Although the gun was never recovered, two 9-millimeter Perfecta bullet casings were found near Palomo's body.

Defendant was charged with first degree murder (§§ 187, 189; count 1). The murder count included a firearm enhancement allegation under section 12022.53, subdivision (d). For crimes committed against Palomo's girlfriend, defendant was charged with witness intimidation (§ 136.1, subd. (c)(1); count 2) and making criminal threats (§ 422; count 3). Counts 2 and 3 included firearm enhancement allegations under section 12022.5, subdivision (a). Based on the disappearance of his wife's handgun, defendant was charged with petty theft (§§ 484, 488; count 4) and possession of a firearm by a convicted felon (§ 29800, subd. (a); count 5). He was further alleged to have suffered a prior strike (§§ 667, subds. (b)-(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)(1)), and to have served three prior prison terms within the meaning of section 667.5, former subdivision (b).

A jury trial was held in 2018. The People's case established the facts summarized above and notably included the following evidence. Palomo's girlfriend testified to being "a hundred percent sure" defendant was the man who had threatened her at the time of

3.

Palomo's death. Defendant's wife testified that he had previously talked about wanting to obtain a firearm for the purpose of killing someone named "Palomo." Another witness admitted to having driven defendant to and from the immediate vicinity of the crime scene in a black 1999 Honda Accord. An additional witness testified to seeing defendant near Palomo's residence during the relevant time period.

The jury found defendant guilty as charged on all counts. In a bifurcated proceeding, the trial court made true findings on all prior conviction allegations and two of the three prior prison term allegations. Defendant was sentenced to an aggregate prison term of 105 years to life.

## DISCUSSION

**Denial of Motion for Mistrial**

<u>Additional Background</u>

During questioning of the witness who had seen defendant near Palomo's residence, the prosecutor asked, "As you were walking through there, did you hear anything that was out of the ordinary?" The purpose of this question was to establish that the witness heard gunshots. The witness gave a nonresponsive answer: "Well, at the beginning of that white fence right there, we were talking and - I have done time before with Robert here [i.e., defendant]. I have done time with him before. He talked, said hi to me and stuff. That is about it.…"

Defense counsel requested and was granted a sidebar conference. A recess was taken, and proceedings continued outside the presence of jurors. The ensuing discussion revealed that the witness had been uncooperative with investigators for both sides and had never disclosed that he was acquainted with defendant. Defense counsel accused the prosecutor of misconduct, but the prosecutor denied having prior knowledge of a connection between defendant and the witness, much less that they had "done time" together. Defense counsel moved for a mistrial based on "[n]ot having been made aware of this information," and the jury learning of defendant's prior incarceration.

4.

The trial court found there was no wrongdoing by the prosecution. The motion for mistrial was denied, but the trial court offered, "upon defense request," to give a limiting instruction regarding the witness's testimony. Defense counsel said, "I'll do it at this point," which was intended to constitute a request for such an instruction.

After discussing some related matters, the trial court said, "I will instruct the jury that they are not to consider any information about how [the witness] knows [defendant] for any other purpose except to explain how they know each other." Next, the court inquired of defense counsel's preference regarding the timing of the instruction. Defense counsel suggested waiting until the witness made an "official" in-court identification of defendant.

Direct examination resumed and the witness formally identified defendant. At that point, the trial court asked defense counsel, "[D]id you wish an instruction at this time?" Counsel replied, "No. I'll ask depending on how the questioning proceeds." The witness's testimony concluded without a request by counsel for the curative instruction, and the case proceeded to the close of evidence without further discussion of the issue.

The issue may have been revisited during an unreported jury instruction conference. This is suggested by the trial court's editing of the CALCRIM No. 303 instruction, which ordinarily consists of two sentences: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." The trial court added this language: "For example, you are not to consider any evidence of the defendant's past or present custodial status except as it pertains to witnesses' knowledge of the defendant or prior statements."

There were no objections to the revised CALCRIM No. 303 instruction. Defendant's attorney was asked, "[I]s the defense objecting to any of the instructions being given, any of the editing that we have done, or are you offering any instructions that are being refused?" Counsel replied, "No to all."

Law and Analysis

"A court should grant a mistrial motion based on a witness's statement if it judges the defendant has been prejudiced in a way that an admonition or instruction cannot cure. Because this is inherently a speculative matter, the trial court has considerable discretion in ruling on a mistrial motion. [Citation.]" (*People v. Rices* (2017) 4 Cal.5th 49, 92.) The trial court's refusal to declare a mistrial is thus reviewed under the abuse of discretion standard. (*Ibid.*)

Defendant's briefing makes clear that he not alleging prosecutorial misconduct or basing his claim on any discovery violations. His arguments focus on the jury learning he had previously "done time." However, three assertions of error have been raised for the first time on appeal. We will discuss those contentions before evaluating the trial court's discretionary ruling.

Defendant faults the trial court for not giving a "timely" admonition while the incident was fresh in the jurors' minds. As explained above, the trial court left the timing of the admonition up to defense counsel. The judge interrupted the resumed examination of the witness to give the admonition, but defense counsel declined it.

"Counsel has an obligation not only to secure a ruling on any matter addressed to the trial court for resolution, but also to affirmatively seek the full implementation of that ruling once it is rendered." (*People v. Heldenburg* (1990) 219 Cal.App.3d 468, 474; accord, *People v. Cowan* (2010) 50 Cal.4th 401, 480.) " ' "In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them" ' " [Citations.]" (*People v. Braxton* (2004) 34 Cal.4th 798, 814.) Furthermore, as noted in the respondent's brief, "the trial court is not obliged to give limiting instructions the moment they are requested or when the limited evidence is presented; subsequent instruction can be sufficient in a proper case. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468,

6.

534.)  Given the circumstances, the timing of the trial court's remedial efforts is not a ground for reversal.  (See *People v. Heldenburg*, *supra*, 219 Cal.App.3d at pp. 474-475 [forfeiture of claim where "defense counsel obtained the trial court's agreement that an admonition to the jury was called for, but then sat quietly by as the trial court omitted to give the admonition"].)

Next, defendant argues the trial court's editing of CALCRIM No. 303 was insufficient to cure the error.  However, as previously explained, defense counsel did not challenge that instruction or propose alternative language.  Failure to object to the adequacy of the curative instruction forfeited defendant's belated arguments on appeal.  (See *People v. Sanchez* (2016) 63 Cal.4th 411, 461-462.)  "If defendant had wanted the court to modify the instruction, he should have requested it."  (*Id*. at p. 461.)

Finally, defendant notes the witness's testimony was not stricken.  "A witness must give responsive answers to questions, and answers that are not responsive shall be stricken *on motion of any party*."  (Evid. Code, § 766, italics added.)  Defense counsel did not move to strike the witness's remarks, so any claim of error based on the testimony not being stricken is without merit.

We now address the main issue, i.e., whether the jury hearing that defendant had "done time" necessitated a mistrial.  The unauthorized disclosure of information regarding a defendant's prior incarceration does not necessarily constitute reversible error.  (*People v. Jennings* (1991) 53 Cal.3d 334, 374-375.)  Furthermore, although mistrial rulings are often upheld based on the adequacy of a curative instruction, circumstances may justify not declaring a mistrial even in the absence of such an instruction.  (See, e.g., *People v. Elliott* (2012) 53 Cal.4th 535, 575-576 [no abuse of discretion where defense counsel declined trial court's offer of a curative instruction]; *People v. Valdez* (2004) 32 Cal.4th 73, 124-125 [same; witness's indirect reference to defendant's custodial status "was not so grave that a curative instruction would not have mitigated any possible prejudice"].)  "A trial court should grant a mistrial only when a

7.

party's chances of receiving a fair trial have been irreparably damaged ….'" (*People v. Silva* (2001) 25 Cal.4th 345, 372.)

In *People v. Bolden* (2002) 29 Cal.4th 515, a police officer testified that the defendant's current address was " 'the Department of Corrections parole office.' " (*Id*. at p. 554.) The California Supreme Court affirmed the denial of a motion for mistrial, saying it was "doubtful that any reasonable juror would infer from the fleeting reference to a parole office that defendant had served a prison term for a prior felony conviction" and further concluding "[t]he incident was not significant in the context of the entire guilt trial ...." (*Id*. at p. 555.) The high court did not discuss whether a curative instruction had been given.

In *People v. Marshall* (1996) 13 Cal.4th 799, a witness gave unsolicited testimony regarding the defendant's status as an " 'ex-felon.' " (*Id*. at p. 837.) Defense counsel moved for a mistrial and to have the testimony stricken. The motion for mistrial was denied, but the motion to strike was granted. However, the trial court "never actually struck the testimony, which therefore remained in the record for the jury to consider." (*Id*. at p. 838.) Pursuant to defense counsel's request, a curative instruction was not given. Despite those circumstances, the California Supreme Court affirmed the denial of the mistrial motion. It concluded the improper testimony was not "so prejudicial as to require reversal." (*Id*. at p. 839.)

Cases like *Bolden* and *Marshall* demonstrate that isolated or fleeting remarks alluding to a defendant's criminal history are not so inherently prejudicial that a mistrial is always warranted. (Accord, *People v. Avila* (2006) 38 Cal.4th 491, 571, 574 [admonishment cured any prejudice from testimony referring to defendant's recent incarceration].) Moreover, such evidence may be "nonprejudicial 'in the light of a record which points convincingly to guilt….' [Citation.]" (*People v. Rolon* (1967) 66 Cal.2d 690, 693; see *People v. Harris* (1994) 22 Cal.App.4th 1575, 1581 [any error in the denial of a motion for mistrial was harmless given the overwhelming evidence of guilt]; see

8.

also, *People v. Dunn* (2012) 205 Cal.App.4th 1086, 1100 [employing same rationale where basis for mistrial motion was the sudden unavailability of an expert witness].) We are not persuaded that the trial court's ruling was erroneous. In any event, the witness's improper testimony can only be viewed as harmless when considered in light of the overwhelming evidence of defendant's guilt. Therefore, the trial court did not commit reversible error by denying the motion for a mistrial.

**Sentencing Issues**

### Prior Prison Term Enhancements

The trial court found defendant had served two prior prison terms for purposes of former subdivision (b) of section 667.5. Section 667.5 "contains a 'washout' exception and does not apply with regard to 'any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction.' [Citation.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 889.) Defendant claims the trial court erred by failing to recognize that one of his prison priors was subject to the washout exception. The People concede this issue. However, the question presented has been rendered moot by the enactment of Senate Bill 136.

As of January 1, 2020, the one-year enhancement provided for in section 667.5, subdivision (b), is inapplicable to all prior prison terms except those served for a sexually violent offense within the meaning of Welfare and Institutions Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.) Under the current law, none of defendant's prior prison terms qualify for the enhancement.[2] It has uniformly been held, including in cases from this district, that Senate Bill 136 applies retroactively to nonfinal judgments.

---

[2] Defendant served time in prison for a 1994 conviction of aggravated assault (§ 245, subd. (a)(1)), a 2006 drug conviction under former section 11377 of the Health and Safety Code (later reduced to a misdemeanor under Proposition 47), and a 2010 conviction of second degree robbery (§§ 211, 212.5, subd. (c)).

9.

(E.g., *People v. Winn* (2020) 44 Cal.App.5th 859, 872; *People v. Jennings* (2019) 42 Cal.App.5th 664, 681-682; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341-342.) Therefore, because defendant's appeal was pending when Senate Bill 136 was enacted, all true findings on the section 667.5 allegations must be reversed and the corresponding sentence enhancements must be stricken from the judgment.

Senate Bill 1393

Defendant's prison sentence includes five-year enhancements imposed pursuant to section 667, subdivision (a), based on a prior serious felony conviction. In September 2018, a few months after defendant filed his notice of appeal, Senate Bill 1393 was signed into law. (Stats. 2018, ch. 1013, §§ 1-2.) The legislation amended sections 667, subdivision (a)(1), and 1385, subdivision (b). As a result, effective January 1, 2019, trial courts have discretion to strike a prior serious felony conviction for purposes of sentencing.

Senate Bill 1393 applies retroactively to nonfinal judgments. (*People v. Stamps* (2020) 9 Cal.5th 685, 699.) Defendant seeks to have this matter remanded for the trial court to consider exercising its discretion to strike his prior serious felony conviction. The People argue remand is unnecessary and would constitute a futile act given the unlikelihood of any leniency. Their argument is based on the trial court's previous imposition of upper terms and consecutive sentences, and its denial of a motion made pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 concerning defendant's prior strike. They further note that the trial court found no mitigating circumstances.

"Remand is required unless the record reveals a clear indication that the trial court would not have reduced the sentence even if at the time of sentencing it had the discretion to do so. [Citation.] Without such a clear indication of a trial court's intent, remand is required when the trial court is unaware of its sentencing choices." (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110; accord, *People v. Bell* (2020) 47 Cal.App.5th 153,

198-199.)  Here, the trial court offered few statements regarding its sentencing choices beyond identifying as aggravating circumstances defendant's criminal history and unsatisfactory performance on probation and parole.  (Cf. *People v. Jones* (2019) 32 Cal.App.5th 267, 275 [declining to remand where trial court had expressed " 'great satisfaction' in imposing the 'very lengthy sentence' it imposed"]; *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 [trial judge called defendant " 'the kind of individual the law was intended to keep off the street as long as possible' "].)

Although the original punishment may suggest a different outcome is unlikely, we will grant defendant's request and refrain from guessing how the trial court might exercise its discretion on remand.  (See *People v. Almanza*, *supra*, 24 Cal.App.5th at pp. 1110–1111 ["speculation about what a trial court might do on remand is not 'clearly indicated' by considering only the original sentence"].)  We express no opinion regarding the trial court's future sentencing determinations.  (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 428.)

### *Dueñas* Claim

Defendant claims the trial court erred by imposing fines, fees, and assessments under sections 1202.4, subdivision (b), 1202.45, 1465.8, and Government Code section 70373 without determining whether he had the ability to pay them.  Defendant also complains of a restitution order made pursuant to section 1202.4, subdivision (f).  None of these issues were raised below, and the People argue defendant's challenges were forfeited by a failure to object.  The People also dispute the assertions of error.

Defendant relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, which holds "that due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under … section 1465.8 and Government Code section 70373." (*Id.* at p. 1164.)  The *Dueñas* opinion further holds that "although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering

11.

increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid.*)

In his opening brief, defendant argues all fines, fees, assessments, and restitution obligations "must be set aside."  In his reply brief, defendant says the subject orders must be stricken or stayed unless, in further proceedings on remand, his ability to pay the imposed amounts is established.  His arguments impliedly assign the burden of proof to the People.  The California Supreme Court will decide whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof.  (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

This district has held that a defendant forfeits an "ability to pay challenge" by failing to raise it at the time of sentencing.  (E.g., *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053-1054; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073–1075 (*Aviles*); contra, *People v. Son* (2020) 49 Cal.App.5th 565, 596-598.)  However, in cases such as *Lowery* and *Aviles* the appellants were challenging restitution fines in excess of the statutory minimum.  (*Lowery*, at p. 1055; *Aviles,* at p. 1061.)  Section 1202.4, subdivisions (c) and (d) permit defendants to raise an ability to pay objection when the court imposes a restitution fine above the statutory minimum of $300.  Here, because the trial court imposed the minimum restitution fine of $300, defendant did not have a statutory right to object to it.

Assuming his claims are not forfeited, we disagree with defendant's position and conclude the matter need not be remanded on this issue.  For the reasons stated in *Aviles*, we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive.  (*Aviles*, *supra*, 39 Cal.App.5th at

12.

pp. 1067–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Id*. at p. 1072.)

Even if we agreed with *Dueñas*, we would conclude any error arising from the trial court's failure to make an ability to pay finding was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035; *Aviles*, *supra*, 39 Cal.App.5th at pp. 1075–1077.) " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles*, p. 1076.)

We can infer from the record defendant's ability pay the aggregate sum of fines and fees from probable future wages, namely prison wages. (See *Aviles*, *supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 ["a finding of ability to pay a restitution fine may be based on the wages a defendant will earn in prison"].) Defendant is 44 years old and will spend decades in prison before he is eligible for parole. The record discloses no physical or mental disability that would preclude him from earning wages. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not establish his inability to make payments from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

**DISPOSITION**

The prior prison term enhancements imposed pursuant to section 667.5, former subdivision (b), are reversed and ordered stricken from the judgment. Defendant shall be resentenced accordingly. The matter is remanded for a resentencing hearing, at which time the trial court shall consider whether to exercise the discretion conferred by Senate Bill 1393 to strike the prior serious felony conviction enhancements. In all other respects, the judgment is affirmed.

POOCHIGIAN, J.

I CONCUR:


HILL, P.J.

SMITH, J.  Concurring and Dissenting.

I disagree with the majority's resolution of defendant's claims under *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  I would permit defendant to raise his *Dueñas* claims on remand.  However, in keeping with *People v. Son* (2020) 49 Cal.App.5th 565 (lead opn. of Smith, J.), I would find that defendant is entitled, as a matter of constitutional right, to a determination of ability to pay only with regard to the court operations funding assessment pursuant to Government Code section 70373.  Were the trial court to adjust, on remand, the fines and fees formerly imposed in this case, the judgment would be modified accordingly.  In all other respects, I concur with the majority and vote to affirm.

SMITH, J.