Filed 3/7/24  P. v. Rivas CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ADAN CONTRERAS RIVAS,<br><br>        Defendant and Appellant. | A167503<br><br><br>(Contra Costa County<br>Super. Ct. No. 01-198386-5) |

A jury convicted Adan Contreras Rivas of several felonies, including theft by false pretenses.  On appeal, Rivas argues he was denied his right to a fair trial under the federal Constitution because a prosecution witness briefly mentioned that Rivas had been previously arrested.  We disagree and affirm.

## I.  BACKGROUND

### A.  *Factual and Procedural Background*

Between 2020 and 2022, Rivas agreed to perform landscaping projects for various homeowners but failed to complete the work.  The prosecution charged him with five counts of theft by false pretenses (Pen. Code, § 484); four counts of contracting without a license (Bus. & Prof. Code, § 7028, subd. (a)); and failure to obtain workers' compensation insurance coverage (Lab. Code, § 3700.5).  The prosecution also alleged several enhancements, including a prior theft-related term of imprisonment (Pen. Code, § 666) and

prior convictions for contracting without a license (Bus. & Prof. Code, § 7028, subd. (d)).

Trial evidence established that Rivas approached several homeowners and offered to perform various arbor services. On some occasions, Rivas provided a business card that stated he was licensed, bonded, and insured. After being hired and completing the projects, Rivas would then offer to perform larger projects, including landscaping their yards, building a fence, and constructing patio structures. After the homeowners agreed, Rivas asked for advance payments, which the homeowners paid. For a few days afterwards, Rivas would send workers to perform discrete portions of the projects, such as demolition or digging, before completely abandoning the project. Rivas then ignored later attempts by the homeowners to contact him and failed to provide them with requested refunds.

After two of the homeowners filed consumer complaints with the Contractors State License Board, a special investigator determined that from January 1, 2019 to July 13, 2022, Rivas did not possess a contractor's license, and from November 29, 2020 through July 2022, he did not carry workers' compensation insurance.

The jury convicted Rivas of all charges. The trial court then found the enhancements true and sentenced him to state prison.

## B. Relevant Trial Testimony

Before the trial, defense counsel moved to exclude Rivas's prior convictions and to bifurcate the prior convictions and special allegations.[1] The trial court granted the motion.

---

[1] The motion did not specifically mention arrests but sought to exclude prior convictions and " 'evidence . . . relevant solely to demonstrate criminal disposition.' "

2

At trial, however, one of the homeowners testified that he stopped asking Rivas for a refund when he and his wife "came to know [Rivas's] real name" and learned that he had been "previously arrested." At this point, both counsel interrupted and defense counsel objected. The trial court asked if defense counsel would like an order to strike, and when defense counsel indicated he would, the court struck the last portion of the witness's answer and instructed the jury not to consider it.

After the witness's testimony was complete, defense counsel moved for a mistrial on the grounds that mention of a previous arrest violated the trial court's in limine order and would "undoubtedly" foster a sense that Rivas had "a criminal nature." In response, the prosecutor argued it was unclear if the witness was referring to an arrest made in this case or another case, and there were no details that would lead a jury to believe Rivas was arrested for a prior offense.

The trial court denied the mistrial motion, noting it was uncertain whether the jury heard the word "arrest" because the prosecutor interrupted just as the witness made the statement and defense counsel simultaneously objected. Further, even if the jury heard the word "arrest," the court observed there was no reference to the timing of the arrest and, thus, "[f]or all the jury knows, it was an arrest on this offense." The court also indicated that it had stricken the testimony and instructed the jury not to consider it. Lastly, the court noted it had previously instructed the jury that the fact Rivas had been arrested, charged with a crime, or brought to trial was not

3

evidence of guilt, an instruction it would repeat in the final jury instructions. Thus, the court concluded no material prejudice had occurred.

## II. DISCUSSION

Rivas's sole claim on appeal is that the prosecution witness's fleeting reference to Rivas's previous arrest was "extremely prejudicial" and denied him his right to a fair trial under the federal Constitution.[2] We disagree.

"The Fourteenth Amendment to the federal Constitution prohibits states from denying any person due process of law. This guarantee of due process affords criminal defendants the right to a fair trial, 'impos[ing] on States certain duties consistent with their sovereign obligation to ensure "that 'justice shall be done.' " ' " (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 39.) To prove a deprivation of federal due process rights, an appellant must "satisfy a high constitutional standard" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229 (*Albarran*)) to demonstrate that the claimed error rendered the trial "fundamentally unfair" (*Partida*, *supra*, 37 Cal.4th at p. 439). Where an appellant asserts evidence was erroneously admitted, this standard can only be met where there are " 'no permissible inferences the jury may draw from the evidence' " and the evidence is " ' "of such quality as necessarily prevents a fair trial." ' " (*Albarran*, at p. 229.)

In the case of a deprivation of federal due process, "reversal is required unless the state can prove beyond a reasonable doubt that the error did not

---

[2] Rivas does not challenge the trial court's denial of his motion for a mistrial. As such, we will not discuss it. Additionally, Rivas contends—and the Attorney General assumes—that Rivas did not forfeit his due process argument on appeal. We agree. (See *People v. Partida* (2005) 37 Cal.4th 428, 436–437 (*Partida*) [narrow due process argument may be asserted on appeal if it is predicated on an issue that was raised at trial].)

contribute to the verdict." (*Albarran*, *supra*, 149 Cal.App.4th at p. 229; *Chapman v. California* (1967) 386 U.S. 18, 24.)  Absent fundamental unfairness, however, state law error in admitting evidence is reversible only when it is "reasonably probable the verdict would have been more favorable to the defendant absent the error."[3]  (*Partida*, *supra,* 37 Cal.4th at p. 439; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Here, no error occurred that rendered Rivas's trial fundamentally unfair.  Notably, the testimony that Rivas had been "previously arrested" was never admitted into evidence.  Instead, the moment the witness mentioned an arrest, the prosecutor immediately interjected, defense counsel objected, and the comment was stricken from the record.  Under these circumstances, as observed by the trial court, it is unclear if the jury even heard the word "arrest."  But even if the jury had heard the word "arrest" and it had not been stricken, permissible inferences could have been drawn, and the evidence was not " ' "of such quality as necessarily prevents a fair trial." ' "  (*Albarran*, *supra*, 149 Cal.App.4th at p. 229.)  For example, as the trial court pointed out—and as Rivas himself acknowledges in his opening brief—the reference to a previous arrest was ambiguous regarding whether the witness was referring to an arrest for a prior offense or an arrest on the present offenses.  Thus, the jury could have permissibly inferred that the witness was referring to an arrest on the charged offenses and any argument of fundamental unfairness would fail on that ground alone.  (*Ibid*.)

No such inference was required, however, because the witness's statement was stricken.  And, after striking the statement, the trial court

---

[3] Because we find no fundamental unfairness, we also address the *Watson* standard, even though Rivas only makes cursory reference to it in his briefs.

immediately admonished—and later re-instructed—the jury to not consider it. It is well established—and Rivas does not dispute—that "[a] jury is presumed to have followed an admonition to disregard improper evidence particularly where there is an absence of bad faith," and "[i]t is only in the *exceptional* case that 'the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions.' " (*People v. Allen* (1978) 77 Cal.App.3d 924, 934–935 (*Allen*), italics added.) The finding of an exceptional circumstance depends on the facts of each case, but courts have held that "[a]n improper reference to a prior conviction . . . is nonprejudicial 'in the light of a record which points convincingly to guilt.' " (*People v. Rolon* (1967) 66 Cal.2d 690, 693.)

The record here contained ample evidence of Rivas's guilt. The prosecution presented testimony by multiple homeowners who outlined in detail how Rivas—in very similar fashion for each—persuaded them to hire him for various projects, collected payment, and sent workers to perform discrete tasks before completely abandoning the work. This testimony was bolstered by documentary evidence of checks the homeowners had written, and quotes and invoices Rivas had provided for the proposed projects. The prosecution also proffered evidence by an investigator who testified Rivas did not have a contractor's license and did not carry workers' compensation insurance when he took on the projects.

Rivas does not direct us to any conflicting evidence. As such, his case is clearly distinguishable from the ones discussed in his opening brief—*People v. Figuieredo* (1955) 130 Cal.App.2d 498, *People v. Ozuna* (1963) 213 Cal.App.2d 338, and *Allen*, *supra*, 77 Cal.App.3d 924—where some mention was made of the defendant's prior criminal history but the case for defendant's guilt was also much closer. (See *Figuieredo*, at p. 504; *Ozuna*, at

6

p. 341; *Allen*, at p. 935.)  Here, in contrast, the evidence of Rivas's guilt was overwhelming; thus, the fleeting reference to a previous arrest was nonprejudicial and did not result in a due process violation.  (*People v. Bolden* (2002) 29 Cal.4th 515, 555 [fleeting reference to a parole office in connection with obtaining defendant's address was "not significant in the context of the entire guilt trial"].)

We therefore conclude that Rivas was not deprived of his constitutional right to a fair trial.  Further, because the evidence of Rivas's guilt was overwhelming, it is not reasonably probable that he would have obtained a better verdict in the absence of the witness's brief and vague mention of a previous arrest.

### III.  DISPOSITION

The judgment is affirmed.

CASTRO, J.*


WE CONCUR:


HUMES, P. J.


LANGHORNE WILSON, J.


A167503
*People v. Rivas*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8